MIGUEL MIJES *et al.*, Plaintiffs-Appellants, v. PRIMERICA LIFE INSURANCE COMPANY *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 1—00—0229

Opinion filed December 6, 2000.—Rehearing denied January 9, 2001.

Samuel A. Shelist, of Edward L. Schuller & Associates, of Chicago, for appellants.

Lord, Bissell & Brook, of Chicago (Daniel J. Zollner and Hugh S. Balsam, of counsel), for appellee Primerica Life Insurance Co.

Hinshaw & Culbertson, of Chicago (Thomas M. Hamilton, Christine L. Olson, and David R. Bradford, of counsel), for appellee Allstate Insurance Co.

JUSTICE WOLFSON delivered the opinion of the court:

Maria Mijes' accidental death near Mexico City in July 1997 gave rise to two different kinds of insurance claims—life and uninsured motorist. In each, the trial judge held the unambiguous language of insurance company documents bars coverage. We affirm the trial judge's grants of summary judgment to the two insurance companies.

FACTS

In June 1997, Miguel Mijes (Miguel) and his wife Maria had a life insurance policy application pending with Primerica Life Insurance Co. (Primerica). The "APPLICATION AGREEMENT" provided "except as provided in the 'Conditional Premium Receipt,' the insurance hereunder applied for shall not take effect unless the first full premium is paid and the policy issued and delivered." The conditional premium receipt, in turn, provided "no insurance will be in effect before a Policy is issued and delivered unless all of the Conditions below are met."

Under the heading "CONDITIONS FOR COVERAGE" Primerica required:

> "All items requested by the Company concerning *** insurability must have been received by the Company. Such items may include, but are not limited to, medical examinations, blood and/or urine studies, attending physicians statements (APS) and electrocardiograms (EKG)."

Coverage under the conditional premium receipt did not begin

until the latest of three dates, one of which was the date Primerica received the results of all tests and exams it had requested. On June 9, 1997, Miguel and Maria signed the agreement and receipt, acknowledging they had read and understood the terms of the conditional coverage.

On June 20, 1997, Primerica requested blood and urine samples from Maria. In early July, a medical test management service contacted Maria, but she refused to schedule an appointment until she spoke with her insurance salesman. Her salesman told her Primerica would not process the Mijes' application until she complied with its request for blood and urine samples. In late July, Maria left for a vacation in Mexico before submitting the requested samples.

On July 27, 1997, a rental car driven by Miguel, in which Maria was a passenger, was struck by an uninsured vehicle near Mexico City, Mexico. Maria died two days later from injuries she sustained in the accident.

At the time of the accident Miguel and Maria were "insured persons" under an automobile insurance policy issued by Allstate Insurance Co. (Allstate). The policy provided uninsured motorist coverage:

> "We will pay those damages an insured person is legally entitled to recover from the owner or operator of an uninsured auto because of:
>
> 1. bodily injury sustained by an insured person ***.
>
> The bodily injury *** must be caused by accident and arise out of the ownership, maintenance or use of an uninsured auto."

The policy defined an "uninsured auto" as "a motor vehicle which has no bodily injury or property damage liability bond or insurance policy in effect at the time of the accident."

On page 2 of the policy, under the heading "GENERAL" and the subheading "When And Where The Policy Applies," Allstate said:

> "Your policy applies only during the policy period. During this time, it applies to covered losses to the auto, accidents, and occurrences within the United States of America, its territories and possessions, or Canada, or between their ports."

Under the heading "Limited Mexico Coverage," Allstate said:

> "It is important that prior to entering or driving in Mexico, you should check with the appropriate Mexican authorities regarding auto insurance requirements.
>
> Auto accidents in Mexico are subject to the laws of Mexico—not the United States of America. In the Republic of Mexico, an auto accident can be considered a criminal offense as well as a civil matter.
>
> In some cases, the coverage under this policy may not be

recognized by Mexican authorities and we may not be allowed to provide any insurance coverage at all in Mexico. For your protection, you should seriously consider purchasing auto coverage from a licensed Mexican insurance company before driving into Mexico.

However, when possible, protection will be afforded for those coverages for which a premium is shown on the Policy Declarations for an insured auto while that auto is within 75 miles of the United States border and only for a period not to exceed ten days after each separate entry into the Republic of Mexico."

Miguel sought coverage from Primerica and Allstate. Both refused. Miguel then filed a breach of contract complaint against these insurers and a negligence complaint against the uninsured Mexican motorists. On March 19, 1999, the trial court granted summary judgment to Primerica. On December 8, 1999, the court granted summary judgment to Allstate. On January 11, 2000, the court entered a Rule 304(a) (155 Ill. 2d R. 304(a)) order, declaring the summary judgment orders final and appealable. This appeal followed.

### DECISION

■ Summary judgment should be granted if "there is no genuine issue as to any material fact and *** the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 1998). We review *de novo* the trial court's decision to grant summary judgment. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 390, 620 N.E.2d 1073 (1993). In Illinois, construction of an insurance policy is a question of law particularly appropriate for resolution by summary judgment. *Crum & Forster*, 156 Ill. 2d at 391.

### 1. Primerica's Life Insurance Policy

Miguel contends Primerica breached its insurance contract by refusing to provide life insurance coverage.

We agree with the trial court: "[T]his is a case where the insurance policy is clear in such a way that it unequivocally denies recovery in this case. *** In order for the life insurance policy to become effective, the terms of the policy required a few conditions precedent to be satisfied. One was the submission, upon request, of certain fluids, like blood and urine."

■ A condition precedent is an act that one party to a contract must perform before the other party's obligation under the contract begins. *Kilianek v. Kim*, 192 Ill. App. 3d 139, 142, 548 N.E.2d 598 (1989). That is, "the contract is neither enforceable nor effective until the condition is performed or the contingency occurs." *Jones v. Seiwert*, 164 Ill. App. 3d 954, 958, 518 N.E.2d 394 (1987); accord *Hardin,*

*Rodriguez & Boivin Anesthesiologists, Ltd. v. Paradigm Insurance Co.,* 962 F.2d 628, 644 (7th Cir. 1992) (applying Illinois law).

■ The conditional premium receipt unambiguously provided there would be no insurance coverage to the Mijes unless they met the coverage conditions, which included completing the medical tests requested by Primerica. The parties agree Maria did not submit blood and urine samples. She failed to perform a condition precedent.

But Miguel contends a condition precedent must be material. This one, he says, is not material.

Illinois courts do not require materiality: "Unless the conditions precedent to coverage are fulfilled, no interim coverage takes effect." *Garde v. American Family Life Insurance Co.,* 147 Ill. App. 3d 1034, 1038, 498 N.E.2d 292 (1986); see *Fields v. Franklin Life Insurance Co.,* 115 Ill. App. 3d 954, 959, 451 N.E.2d 930 (1983) ("the applicant must have completed the required medical examination before temporary insurance could be in effect"); *Anetsberger v. Metropolitan Life Insurance Co.,* 14 F.3d 1226, 1232 (7th Cir. 1994) (applying Illinois law) ("Because we find that the Receipt's language plainly and sufficiently warned plaintiffs that temporary insurance would not begin until the medical exam was completed, we hold that under the facts of this case *** temporary insurance never began ***"). See also Restatement (Second) of Contracts § 237, Comment *d* (1981) ("If *** the parties have made an event a condition of their agreement, there is no mitigating standard of materiality or substantiality applicable to nonoccurrence of that event").

Because Miguel could not recover under the policy, summary judgment in favor of Primerica was appropriate.

### 2. Allstate's Uninsured Motorist Policy

■ Miguel also contends Allstate breached its contract by refusing to provide uninsured motorist insurance coverage in Mexico.

The policy indisputably applied to accidents occurring within the United States, its territories, and Canada. The policy also provided "Limited Mexico Coverage." As Allstate explained, Mexican authorities may not recognize its policy, and "we may not be allowed to provide any insurance coverage at all in Mexico." But, "when possible," or when Mexico allows, Allstate will afford coverage "for an insured auto while that auto is within 75 miles of the United States border and only for a period not to exceed ten days after each separate entry into the Republic of Mexico."

Allstate does not claim Mexican authorities outlawed coverage here. Under the policy, then, Allstate would provide liability and uninsured motorist coverage if the Mijes' rental car was within 75 miles of

the United States border at the time of the accident. The parties agree it was not. The territorial limitation applied.

But Miguel contends the territorial limitation on uninsured motorist coverage violates Illinois public policy. This issue is one of first impression.

The overwhelming weight of authority holds territorial limitations are valid if they apply equally to statutorily mandated uninsured motorist and liability coverages. See *Boatner v. Atlanta Specialty Insurance Co.*, 115 F.3d 1248 (5th Cir. 1997) (applying Mississippi law); *Curtis v. Allstate Insurance Co.*, 473 F. Supp. 315 (E.D. La. 1979), *aff'd*, 631 F.2d 79 (5th Cir. 1980) (applying Louisiana law); *Bartning v. State Farm Fire & Casualty Co.*, 162 Ariz. 344, 783 P.2d 790 (1989); *Robles v. California State Automobile Ass'n*, 79 Cal. App. 3d 602, 145 Cal. Rptr. 115 (1978); *Fischer v. State Farm Mutual Automobile Insurance Co.*, 495 So. 2d 909 (Fla. App. 1986); *Degollado v. Gallegos*, 260 Kan. 169, 917 P.2d 823 (1996); *Higbee v. USAA Casualty Insurance Co.*, 617 So. 2d 51 (La. App. 1993); *Brillo v. Hesse*, 560 So. 2d 84 (La. App. 1990); *Heinrich-Grundy v. Allstate Insurance Co.*, 402 Mass. 810, 525 N.E.2d 651 (1988); *Smith v. Illinois Farmers Insurance Co.*, 455 N.W.2d 499 (Minn. App. 1990); *State Farm Automobile Insurance Co. v. Cabuzzi*, 123 N.H. 451, 462 A.2d 129 (1983); *Dominguez v. Dairyland Insurance Co.*, 123 N.M. 448, 942 P.2d 191 (App. 1997); *Hall v. Amica Mutual Insurance Co.*, 538 Pa. 337, 648 A.2d 755 (1994); *Pollard v. Hartford Insurance Co.*, 583 A.2d 79 (R.I. 1990); *Marchant v. South Carolina Insurance Co.*, 281 S.C. 585, 316 S.E.2d 707 (App. 1984); *Lovato v. Liberty Mutual Fire Insurance Co.*, 109 Wash. 2d 43, 742 P.2d 1242 (1987) (en banc); but see *Mission Insurance Co. v. Brown*, 63 Cal. 2d 508, 407 P.2d 275, 47 Cal. Rptr. 363 (1965) (*en banc*) (voiding a territorial limitation that narrowed uninsured motorist coverage, but not liability coverage); see also *Prudential Property & Casualty Insurance Co. v. Myers*, 232 N.J. Super. 455, 557 A.2d 686 (1989); *Quevillon v. State Farm Fire & Casualty Co.*, 177 Wis. 2d 160, 501 N.W.2d 855 (App. 1993). See generally P. White, Annotation, *Validity of Territorial Restrictions on Uninsured/Underinsured Coverage in Automobile Insurance Policies*, 55 A.L.R.5th 747 (1998); 8C J. Appleman & J. Appleman, Insurance Law & Practice § 5067.25 (1981).

The Illinois Insurance Code requires all automobile insurance policies to provide uninsured motorist coverage at the limits set for mandatory liability coverage by the Illinois Safety and Family Financial Responsibility Law (Financial Responsibility Law) (625 ILCS 5/7—100 *et seq.* (West 1998)). 215 ILCS 5/143a(1) (West 1998), citing 625 ILCS 5/7—203 (West 1998); *cf. Pellegrini v. Jankoveck*, 245 Ill. App. 3d 35, 37, 614 N.E.2d 319 (1993) (discussing the purpose of the uninsured motorist statute).

The Financial Responsibility Law never mentions Mexico. In fact, it defines "Motor vehicle liability policy" as an "owner's policy" which provides liability insurance "within the continental limits of the United States or the Dominion of Canada." 625 ILCS 5/7—317(b)3 (West 1998).

Here, the territorial limitation fell under the policy's general provisions, and it applied to the entire policy. *Milwaukee Guardian Insurance, Inc. v. Taraska*, 236 Ill. App. 3d 973, 975, 602 N.E.2d 70 (1992). As required by our statutes, the policy's uninsured motorist coverage was coextensive with its liability coverage. Although Allstate afforded only limited coverage in Mexico, our statutes do not require any such coverage.

The territorial limitation in Allstate's "Limited Mexico Coverage" did not violate Illinois public policy. We see, on the contrary, valid reasons to recognize territorial limitations. See *Higbee*, 617 So. 2d at 56 ("Insurers should not be required to assume risks of loss for legal systems with substantial differences ***"); *Hall*, 538 Pa. at 349, 648 A.2d at 761 ("If uninsured motorist coverage were extended worldwide, the rates of *** insurers would necessarily reflect the increased scope of the risk as well as the increased difficulty and expense involved in the investigation of claims").

*Doxtater v. State Farm Mutual Automobile Insurance Co.*, 8 Ill. App. 3d 547, 290 N.E.2d 284 (1972), relied on by Miguel, does not apply. In *Doxtater*, an insured was involved in an accident between a motorcycle he was driving and an automobile driven by an uninsured motorist. The motorcycle was not covered by the insured's automobile policy, and the policy excluded uninsured motorist coverage for injuries sustained while driving a vehicle not covered by the policy.

The court held the uninsured motorist statute invalidated the policy exclusion. *Doxtater*, 8 Ill. App. 3d at 553. The court concluded the broad interpretation given to the statute by the Illinois Supreme Court required insurers to provide uninsured motorist coverage, "regardless of whether, at the time of injury, the insureds occupied or operated vehicles declared in the subject policy." *Doxtater*, 8 Ill. App. 3d at 552.

But, here, Allstate does not assert the rental car was not a covered vehicle. *Cf. Kvalheim v. Farm Bureau Mutual Insurance Co.*, 195 N.W.2d 726 (Iowa 1972) (a territorial limitation will defeat coverage for a foreign uninsured motorist accident even if the insureds' vehicle remained in the United States). Allstate simply relies on its valid, bargained-for, territorial limitation. There is no public policy barrier to enforcing unambiguous territorial limits in an insurance policy, whether the limits reach 75 miles into Mexico or, as in *United States*

*Fire Insurance Co. v. Schnackenberg*, 88 Ill. 2d 1, 8, 429 N.E.2d 1203 (1981), 2½ blocks from the insured premises: "[W]e should not impose such open-ended coverage when the geographic limits of the policy are clear."

Because Miguel could not recover under the policy, summary judgment in favor of Allstate was appropriate.

CONCLUSION
We affirm the trial court's grants of summary judgment for both defendants.

Affirmed.

HALL, P.J., and BURKE, J., concur.