HANNA MATHEY, a Minor, By and Through Her Mother and Next Friend, Joyce Mathey, *et al.*, Plaintiffs-Appellees, v. COUNTRY MUTUAL INSURANCE COMPANY, Defendant-Appellant.

First District (1st Division)   No. 1—99—4108

Opinion filed April 16, 2001.

806

Kilgallon & Carlson, of Chicago (Keith G. Carlson, of counsel), for appellant.

Neville, Pappas & Mahoney, of Chicago (John M. Steed and Loren S. Golden, of counsel), for appellees.

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

On April 30, 1992, a vehicle drove onto the sidewalk of a terminal at O'Hare International Airport (O'Hare) and struck a group of students and adults visiting the airport who had just exited from two school buses. Plaintiffs, several children and adults injured in this accident, brought this declaratory action seeking underinsured motorist coverage from an insurance policy issued by defendant, Country Mutual Insurance Company (Country Mutual). That policy provided underinsured motorists coverage to persons injured while "occupying" a school district vehicle. The policy stated that "occupying means in, upon, getting in, on, out or off." Following a bench trial, the circuit court entered judgment in favor of plaintiffs, finding that each plaintiff occupied the buses at the time of the accident by either "getting *** out or off" the buses. Defendant argues that the trial court: (1) erred in finding coverage under the insurance policy when the court also found that all the plaintiffs had vacated the buses before the accident; (2) erred in failing to require each plaintiff to prove that he or she should be entitled to coverage; and (3) erred in its factual findings. We affirm.

## I. BACKGROUND

On April 30, 1992, two school buses left the Sycamore School District with between 60 and 80 third-grade students, teachers, and chaperones on a field trip to O'Hare. The buses drove to an area between terminals one and two so that the students could tour the inside of the terminal. The buses parked on the street next to the terminals, activated their warning lights, and opened their doors. The students, parents, and teachers exited the buses. However, shortly after the last individual left the bus and while the students were in the process of lining up, a vehicle drove up on the sidewalk and struck several students, parents, and teachers.

Defendant issued an insurance policy to the Sycamore School District that covered vehicles used as part of school activities, which included the two school buses used for the field trip to O'Hare. This policy provided coverage to insured individuals, which it defined as follows:

> "B. WHO IS INSURED
>   ***
>   2. Anyone else occupying a covered auto ***.
>       * * *
>   2. Occupying means in, upon, getting in, on, out, or off."

After it was determined that the vehicle that struck the plaintiffs was underinsured, plaintiffs filed claims for underinsured motorist coverage under defendant's policy. Plaintiffs claimed that they were occupying the school buses, a covered vehicle, at the time of the accident. Defendant denied coverage to each plaintiff and plaintiffs brought this lawsuit.

At trial, Joyce Mathey, a parent and plaintiff, testified that the accident occurred within 10 seconds of her and others exiting the bus. According to Mathey, at the time of the accident, students had not begun to line up on the sidewalk but were mingling in the area near the buses. Another parent and plaintiff, Sara Schwarzbaum, testified that within 30 seconds of her exiting the bus the accident occurred. She further noted that the students were crowded on the sidewalk when she exited the bus and had not yet lined up. A student, Daniel Kozlowski, testified that when he left the bus a crowd of 50 to 60 students was on the sidewalk. He believed that the accident occurred about two to three minutes after he left the bus.

Other witnesses testified to a longer period of time between the students' exit from the buses and the accident. Leona Calhoun, a tour guide assigned to the front of the bus, testified that she exited the bus first and that the accident occurred about 15 minutes after she exited. She also recalled that as soon as the students exited the bus, they

formed groups on the sidewalk. She testified that when the accident occurred, the doors to the buses were open and she pushed students toward and back on the bus. Larry Steczo, a parent, testified that he was the last person to leave the second bus except for the bus driver. When he left the bus, most of the students were in line next to a railing; however, he remembered five or six students and parents behind him. About a minute after he left the bus, the line took one or two steps toward terminal two before they realized that they were going the wrong way. According to Steczo, he started to back up when the underinsured vehicle struck him and knocked him unconscious.

Roxeanne Horton, a teacher, testified that the students lined up after they left the bus. As the students lined up, she was counting them. She testified at trial that the accident occurred about 10 minutes after students started to exit the bus; at her deposition, she testified that the time between the students lining up and the accident was about three minutes. Horton admitted that she could not remember the exact time frame. She also testified that students in line had moved toward terminal two right before the accident. She believed that she was 6 to 10 feet from the buses when the car came on the sidewalk. Rochelle Quode, another teacher, testified that it was about five minutes from the time that the last student exited the bus until the time of the accident. She also testified that the students had lined up and were becoming restless. Immediately before the accident, she testified that she was in the process of making sure each of her students had a partner.

The court believed that the question of insurance coverage required it to analyze the relationship between the insured vehicle and the injured parties. Based on an analysis of the facts, the court found a direct relationship between the injured parties and the process of their exit from the school buses. The court noted that the children had recently alighted from the buses and were still in the "immediate vicinity lining up in accordance with the customary usage of the school's buses." After hearing all the evidence, the trial court made the following factual findings:

"The children and adults had physically vacated the buses;

The bus doors were open at the time of the accident;

As indicated before, the emergency flashers of both buses were operating;

The children were in the process of lining up two by two so the teachers could take a head count;

The next event on the scheduled tour, visiting the terminal on foot, had not yet begun and the party had not moved from the immediate vicinity of the two buses because of the intervention of the underinsured motorist;

The testimony and photographs stipulated in evidence show that most of the children were lining up about six or so feet from the buses but not all of the children were in line and anywhere near the six foot distance, but in fact, were with teachers or chaperones right next to the buses;

When the accident was occurring, Mrs. Calhoun, one of the tour guides with the Sycamore group, pushed one or more children back into the bus through the open doors of the bus to escape the careening auto; and

After the accident, students were found to be on the first bus and no one, aside from Mrs. Calhoun, testified when they reboarded."

The court also found proximity of time and geography between the insured buses and the process of deboarding and noted the following:

"But for the fact that the process had not been completed, the children and accompanying adults would not have been in position to be injured by the underinsured motorist. The facts show that the Plaintiffs were in actual contact (those who reboarded to avoid the collision), or in virtual contact (those with teachers and chaperones right next to the buses and the children and teachers lining up two by two for a head count) with the buses as that term has been defined in the cases."

The court concluded that plaintiffs were "occupying" the buses at the time of the accident and declared that "each and all plaintiffs were covered by [d]efendant's insurance policy provision for underinsured coverage." This appeal followed.

## II. ANALYSIS

### A. Policy Covers Plaintiffs

■ Defendant first argues that the trial court incorrectly interpreted the Country Mutual policy in holding that the plaintiffs were "occupying" the buses. Defendant contends that, even accepting the trial court's factual findings, it erred in finding coverage because the court also found that all the students had vacated the buses and were in the process of lining up when the accident occurred. In construing provisions of an insurance policy, courts must examine the terms used to ascertain the intentions of the parties. *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479 (1997). "If the terms of the policy are clear and unambiguous, they must be given their plain and ordinary meaning." *Koloms*, 177 Ill. 2d at 479. In addition, terms of an insurance policy should be applied as written unless those terms contravene public policy. *State Farm Mutual Automobile Insurance Co. v. Villicana*, 181 Ill. 2d 436, 441-42 (1998). "If the facts are undisputed, the question of whether they fall within the provisions of an insurance

policy is a matter of interpretation and is strictly a question of law for the court to decide." *Indiana Insurance Co. v. Liaskos*, 297 Ill. App. 3d 569, 574 (1998). Defendant's first argument does not challenge the trial court's factual findings and only claims error with its application of the policy terms to the facts; therefore, this challenge solely relates to the trial court's interpretation of the policy, which is a question of law and subject to a *de novo* standard of review. *Indiana Insurance Co.*, 297 Ill. App. 3d at 574.

This court has previously applied policy language similar to the language at issue in this case. In *Wolf v. American Casualty Co.*, 2 Ill. App. 2d 124 (1954), the plaintiff was two or three feet in front of his car when a vehicle struck the rear of his car, pushing it into him. The plaintiff had been out of his car for two or three minutes when the accident occurred. The policy afforded coverage if plaintiff was "in or upon, entering, or alighting from the automobile." *Wolf*, 2 Ill. App. 2d at 125. After noting that words that are simple, everyday words may define a variety of situations so that sometimes it will appear clear that a particular set of circumstances is within the meaning of the insurance provision and at other times doubtful, the court found the use of the word "upon" created an ambiguity. "As related to the instant case, it is the use of the word 'upon' which creates an ambiguity." *Wolf*, 2 Ill. App. 2d at 130. The court concluded, based on the facts of the case, that the plaintiff was protected by the policy provision covering injuries caused by accident "while in or upon, entering or alighting from" the insured automobile.

In *Salinas v. Economy Fire & Casualty Co.*, 43 Ill. App. 3d 509 (1976), a pedestrian struck by a vehicle claimed that his physical contact with the vehicle entitled him to benefits under the owner's insurance policy, which provided benefits to a person who sustains injury while "occupying" the vehicle. The policy defined "occupying" to mean "in or upon or entering or alighting from." *Salinas*, 43 Ill. App. 3d at 509-10. The *Salinas* court noted with approval that in the cases cited by plaintiff, the injured party had some connection with the insured vehicle other than the impact which caused the injuries. The court found no such connection and concluded that "the language employed here is reasonably plain: to hold that plaintiff was 'upon' the automobile because he was struck by it would distort the meaning of the provision and result in an unreasonable construction of the coverage." *Salinas*, 43 Ill. App. 3d at 511.

In *Greer v. Kenilworth Insurance Co.*, 60 Ill. App. 3d 22 (1978), plaintiff, Greer, was a passenger in a vehicle owned by her coworker, Swanson, which was involved in an accident with another vehicle. Greer was insured by Kenilworth and Swanson was insured by Aetna.

After the accident, both vehicles pulled to opposite sides of the shoulder of the expressway. As plaintiff waited to cross the exit ramp to inspect the damage to the other vehicle, she stood about 10 to 15 feet to the rear of the Swanson vehicle. At that time she was struck by an uninsured motorist. *Greer*, 60 Ill. App. 3d at 23. Plaintiff brought separate actions for declaratory judgment against Kenilworth and Aetna. She sought declarations that each insurer owed her benefits under the uninsured motorist provisions of their respective policies. The cases were consolidated and each insurer moved for summary judgment. Aetna's motion for summary judgment was granted on the basis that plaintiff was not an occupant of the insured vehicle at the time of the injury. No other coverage then being available to Greer, the trial court denied Kenilworth's motion for summary judgment and Kenilworth appealed. The appellate court discussed the interpretation of the phrase used in the Aetna policy, " 'in or upon, entering or alighting.' " *Greer*, 60 Ill. App. 3d at 23.

The court in *Greer* first reviewed several Illinois cases interpreting similar policy language that required an individual to be occupying an insured vehicle in order to receive insurance benefits. *Greer*, 60 Ill. App. 3d at 23-36. The court found the language of the policy not ambiguous because it used ordinary and common words. The court, however, recognized the "problem" of applying the policy language to the specific facts of the case. Based on its review of Illinois law, the court indicated that "the necessary elements for imposition of liability upon the insurer are the existence of some nexus or relationship between the insured and the covered automobile and, in addition, either actual or virtual physical contact with the insured vehicle." *Greer*, 60 Ill. App. 3d at 25. The court found that plaintiff showed a relationship with the insured vehicle because she was a passenger in the insured vehicle.

Regarding the element of "actual or virtual physical contact" with the insured vehicle, the court found as follows: "When plaintiff was 10 to 15 feet away from the insured vehicle, she was struck by the uninsured vehicle. There is a total absence of contact between the claimant and the insured vehicle. Further, there is a total absence of any relationship between the insured vehicle and the cause of the alleged injuries. In our opinion, under these circumstances, plaintiff was not in or upon, entering into or alighting from the insured vehicle." *Greer*, 60 Ill. App. 3d at 26. The court affirmed summary judgment by the trial court in favor of Aetna.

Here, we must determine whether plaintiffs were, under the terms of the policy, "in, upon, getting in, on, out or off" the buses at the time of the accident. We agree with the court in *Greer* that this

language contains ordinary and common words that must be applied as written. However, as the court in *Greer* also noted, while the words are everyday words, the variety of factual situations which they define is broad. Defendant urges us to focus on the transportation of the students. Defendant argues that a causal connection to the vehicle as transportation is necessary for the injured party to be "occupying" the vehicle under the terms of the policy. According to defendant, once the buses arrived at the terminal and the last student and adult exited the buses, the buses had ceased to serve as a mode of transportation and their presence in the area of the accident was merely coincidental.

This argument oversimplifies the issue and seems contrary to the results in *Wolf* and *Salinas*. The vehicle in *Wolf* was parked and no longer serving any transportation purpose at the time of the accident. The court, however, found that plaintiff occupied the vehicle, as defined in the insurance policy, even though plaintiff was standing two or three feet in front of his car when the uninsured vehicle struck his vehicle. The court did not rely on the transportation aspect of the insured vehicle, but considered plaintiff's relationship to and physical contact with the vehicle. In *Salinas*, the insured vehicle struck the pedestrian; however, there was no relationship or connection between the plaintiff pedestrian and the insured vehicle other than the ultimate impact which caused the injury; therefore, it was unreasonable to conclude that the pedestrian occupied the vehicle. *Salinas*, 43 Ill. App. 3d at 511.

■ We believe that the appropriate analysis requires us to examine the two factors recognized in *Greer* as necessary elements for imposition of liability upon the insurer, namely, whether a relationship or nexus existed between plaintiffs and the buses and whether the plaintiffs were in actual or virtual contact with the buses. The trial court's factual findings support the conclusion that a nexus or relationship existed. The plaintiffs were passengers on the buses and exited the buses within a matter of minutes before the accident. When the uninsured vehicle drove onto the sidewalk, the plaintiffs were either lining up near the buses or right next to the buses. Furthermore, in accordance with Illinois law, the emergency flashers of each bus were activated, indicating that children were in the process of exiting the vehicle. See 625 ILCS 5/11—1414(c), (d) (West 1998). The children had not yet moved away from the buses and the doors were still open. Therefore, the plaintiffs, as passengers, had a similar nexus or relationship to the buses as the plaintiffs in *Wolf* and *Greer* had to the insured vehicles in those cases. We conclude that the trial court properly found a nexus or relationship between the plaintiffs and the buses.

The more difficult issue, however, is whether the plaintiffs were in actual or virtual contact with the buses at the time of the accident. In *Lumbermen's Mutual Casualty Co. v. Norris*, 15 Ill. App. 3d 95 (1973), the court analyzed whether plaintiff was occupying an insured vehicle even though she was injured while outside the vehicle. The plaintiff, a passenger in the insured car, was sitting on its front fender after the car had parked next to other cars on a gravel road. Plaintiff noticed an approaching vehicle on a collision course. She then jumped off the insured vehicle and ran to the front of the insured car in an attempt to get out of the way. While doing so, she was struck by the approaching vehicle. *Lumbermen's Mutual Casualty Co.*, 15 Ill. App. 3d at 96. Plaintiff filed an uninsured motorist claim because the vehicle that struck her did not have insurance. The court found plaintiff was alighting from the vehicle and was therefore occupying the vehicle under the terms of the policy. *Lumbermen's Mutual Casualty Co.*, 15 Ill. App. 3d at 97-98.

Defendant recognizes in its reply brief that "virtual contact is the standard, meaning the courts require at least some proximity in space to the vehicle, lest the phrases 'getting on' and 'getting off' become devoid of meaning." Defendant argues that the trial court's finding that plaintiffs had vacated the buses before the accident establishes a lack of physical contact between plaintiffs and the buses. If this fact alone required such a conclusion, then coverage would have been denied in *Wolf* and *Lumbermen*. In those cases, the plaintiffs were either standing in front of or proceeding to the front of the insured vehicle during the accident; they had clearly vacated the passenger areas of the vehicle. The courts, nevertheless, found coverage taking into consideration the plaintiffs' relationship and close proximity with the insured vehicle when injured. Similar to the policies in those cases, the policy here provides insurance coverage to individuals "in, upon, getting in, on, out or off" the covered vehicle, which does not exclusively refer to actual physical contact with the covered vehicle, as defendant suggests.

The record reflects that during the accident, plaintiffs were either near or right next to the parked and flashing buses. The record also contains testimony that, during the accident, students reentered the buses to avoid the underinsured vehicle. Those children had more physical contact with the insured vehicles than the plaintiffs in *Wolf* and *Lumberman's*. More fundamentally, all plaintiffs were in close proximity to the buses when the accident occurred; they were doing what school children do when they are in the process of "getting *** out or off" a bus during a school event, lining up next to the buses to confirm that each student completed the bus ride from the last point of travel.

Moreover, Illinois law requires that the warning lights of school buses be activated "for the purpose of loading or discharging pupils." 625 ILCS 5/11—1414(c) (West 1998). A driver of a vehicle must stop his vehicle when he approaches a bus that has its warning lights activated and is receiving or discharging students. 625 ILCS 5/11—1414(a) (West 1998). Therefore, activation of these warning lights indicates to other drivers and members of the public that children are . either getting on or off the bus. The activation of the warning lights informs drivers of other vehicles that the bus has assumed control over the children as passengers. The lights of the buses warned approaching drivers that students were exiting the buses, and the students were on the sidewalk next to the buses, some only a few feet away, lining up for the next activity. In order to avoid the underinsured vehicle, some students reentered the buses. Thus, the record reflects that the element of contact has been met.

Here, based on the totality of the circumstances, including the fact that the warning lights of the buses were activated, the plaintiffs were in close proximity to the buses when the vehicle drove onto the sidewalk, the nature of the relationship between the plaintiffs and the buses, and the plaintiffs' actual or virtual contact with the buses, we conclude the necessary elements for imposition of liability on defendant have been met. Applying the standard of *Greer* to the trial court's factual findings, we conclude that plaintiffs when injured were occupying the buses as contemplated under the terms of the insurance policy wherein "Occupying means in, upon, getting in, on, out or off" and are thereby entitled to underinsured motorist coverage under the Country Mutual policy.

## B. Burden of Proof

■ Defendant next argues that the trial court erred in determining that plaintiffs met their burden of proof as a group rather than addressing each plaintiff's burden individually. During the trial, the court heard testimony about the students, teachers, and parents as a group because this case involved a group of students on a school-sponsored field trip. In its written order, the court addressed all of the plaintiffs, whether they were lining up or standing even closer to the buses at the time of the accident. The court then determined that the "children and adult [p]laintiffs were 'occupying' the insured buses and were in the process of 'getting *** out or off' the insured buses" at the time of the accident. The evidence presented to the court established that this was a group event, and the court ruled based on the evidence. Defendant has offered no authority precluding the court from treating the evidence, in a written order, as it was presented. For the

reasons previously discussed, a review of the record supports the court's finding that the plaintiffs were occupying the buses and satisfied their burden of proof. Therefore, we find no error in the trial court's determination that the plaintiffs met their burden of proof.

## C. Judgment Is Not Against Manifest Weight of the Evidence

■ Defendant next challenges the trial court's factual findings. In a nonjury trial, the trial court's factual findings, its weighing of evidence, and its assessment of credibility are entitled to great deference and will not be reversed on appeal unless the factual findings are against the manifest weight of the evidence. *Voutiritsas v. Intercounty Title Co.*, 279 Ill. App. 3d 170, 183 (1996). A decision is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *Interstate Material Corp. v. City of Chicago*, 273 Ill. App. 3d 527, 529 (1995).

Defendant argues that the trial court chose to believe the interested witnesses, *i.e.*, injured parents and students, and chose to ignore testimony of witnesses who did not file suit. The court recognized the discrepancies in the testimony and its findings reveal no unfair bias or prejudice. Consistent with defendant's uninterested witnesses, the court found that "most of the children were lined up about six feet from the buses." The court, however, found consistent with other testimony, that some children and adults were right next to the buses. The court found that when the accident occurred, "the next scheduled event had not begun" and "the students had not moved from the immediate vicinity of the two buses." Defendant's own witness, Larry Steczo, testified to the very short period of time between his exit from the bus and the impact of the underinsured vehicle. The record reveals that the trial court carefully weighed all the testimony, resolved the factual conflicts, and made informed findings based on all the witnesses testifying. We will not disturb these factual findings.

Defendant additionally attacks the testimony of Leona Calhoun, the tour guide. Although she did not file suit and constitutes an unbiased witness, defendant argues that her testimony that she pushed students back toward the bus during the accident "defies common sense." Defendant, however, references no evidence that contradicts this testimony. Other witnesses confirmed that students were back on the bus after the accident. There is no dispute that the accident occurred quickly and without warning. However, this fact does not negate the testimony of Calhoun and others that they pushed or attempted to push the children away from the out-of-control vehicle. It would seem only natural for an adult under these circumstances to attempt to direct children toward the safety of the school buses and

away from the dangerous vehicle. The court concluded that Calhoun's testimony was credible because no other witness explained how children reentered the bus either during or following the accident. The trial court was in the best position to weigh Calhoun's testimony. We find that the trial court's assessment of this testimony, along with all the other evidence, was not against the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

TULLY and COHEN, JJ., concur.