TODD S. COHS *et al.*, Petitioners-Appellants, v. WESTERN STATES INSURANCE COMPANY, Respondent-Appellee.

First District (2nd Division)   No. 1—00—2548

Opinion filed May 7, 2002.

Michael W. Rathsack and Daniel J. Kaiser, both of Chicago, for appellants.

Bonnie L. Braverman, of Matyas & Norris, of Chicago, for appellee.

JUSTICE McBRIDE delivered the opinion of the court:

This appeal arises out of a declaratory judgment action in which the trial court granted summary judgment in favor of respondent-appellee, Western States Insurance Company (Western). In their complaint, petitioners-appellants, Todd and Jennifer Cohs, sought a declaration that an insurance policy issued by Western to DRW Services, Inc. (DRW), Todd Cohs' employer, provided Cohs with underinsured motorist coverage for personal injuries he sustained while at work. The parties each moved for summary judgment on the issue of coverage. On June 28, 2000, the trial court granted Western's summary judgment motion and denied the summary judgment motion made by the Cohs. The trial court found there was not a sufficient nexus be-

tween Cohs' use of the insured vehicle and the accident to trigger coverage under the underinsured endorsement to the Western policy. The Cohs appealed.

The sole issue on appeal is whether the trial court erred in granting Western's motion for summary judgment. Our standard of review on summary judgment dispositions is *de novo. Ragan v. Columbia Mutual Insurance Co.*, 183 Ill. 2d 342, 349, 701 N.E.2d 493 (1998).

The following facts are undisputed. In his deposition, Todd Cohs testified that he worked as a service technician for DRW. DRW was engaged in the business of assisting gasoline service stations with distributing gasoline from inside the service station, to underground tanks, to pumps where the customers received fuel. On September 23, 1996, the record indicates that Cohs was sent by DRW to service Ron's Marathon gas station located at 1195 Rohlwing in Elk Grove Village, Illinois. He was instructed to install and program a tank monitoring system for the four fuel tanks at Ron's Marathon. The tank monitoring system measured the volume of fuel in the gas tank and also detected if the tank was leaking.

Cohs testified that he drove to the station in a Chevy van that had been modified by DRW. Specifically, the modifications included dividers and shelving that were installed into the vans for the purpose of holding certain parts. Also, the vans were equipped with hinged doors on the side and in the rear. The vans, including the one driven by Cohs, were lettered with a DRW logo on each side.

When Cohs arrived at the station, he pulled up to the premium gas tank, removed the manhole cover or cap, and installed a probe into the tank. In order to insert the probe, Cohs stated that he used a variety of hand tools that he retrieved from his van. Once the first probe was inserted, he then moved the van to work on the remaining three tanks, which were within close proximity to one another. He then installed new probes into the remaining three tanks. He utilized the same type of hand tools from the van that he had used on the first tank. Cohs testified that when he had inserted the probes into the remaining three tanks, he completed the requisite wiring work with respect to those tanks. He then went inside the service station to begin programming a computer system that showed the gas station what tank was being monitored and how low the fuel was with respect to that particular tank.

Cohs realized that he needed to return to the premium tank to obtain a "rep rate." Such a task required reopening the premium fuel tank monitor cover. Cohs testified that he did not move the van and walked back to the premium tank, which was located about 12 feet away from his vehicle. After he had gone over to the tank, he stated

that he needed a "seal pack" and returned to his van to obtain the part. He then returned to the tank. At that point, he went down on one knee, reopened the premium tank, and reached down into the hole about 12 to 15 inches. Within approximately one minute from the time he moved away from the van, he was struck by a motor vehicle owned and operated by Victor Ceron. Ceron was an underinsured motorist.

In his affidavit, Cohs stated that he walked approximately 15 feet from the right rear corner of the van to the premium fuel tank monitor cover, knelt down, and used his tools to remove the tank cover. He also stated that it was less than two minutes between obtaining the seal pack from the van and being struck by Ceron.

The insurance policy, number WDS7—054243—21 (Western Policy), was issued by Western to DRW for the period November 16, 1995, to November 15, 1996. The Illinois underinsured motorist coverage endorsement of Western Policy stated, in relevant part:

"A. COVERAGE

1. We will pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'underinsured motor vehicle.' The damages must result from 'bodily injury' sustained by the 'insured' caused by an 'accident.' The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the 'underinsured motor vehicle.' "

The endorsement also defined, in pertinent part:

"B. WHO IS AN INSURED

1. You

* * *

3. Anyone else 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto.' ***.

* * *

F. ADDITIONAL DEFINITIONS

* * *

2. 'Occupying' means in, upon, getting in, on, out or off."

As we noted above, the trial court entered summary judgment in favor of Western on the basis that it was not possible to conclude that the injury to Cohs arose out of the use of the vehicle. We now address whether the summary judgment order entered below was proper.

Before doing so, we note that in their opening briefs, the parties suggested that the issue to be decided on appeal was whether Cohs was *using* the insured van at the time of the occurrence. Neither party addressed whether Cohs was occupying the vehicle covered by the Western Policy endorsement. As a result of this deficiency, the parties

were ordered to file supplemental briefs on the issue of whether Cohs was "occupying" the van at the time of the accident.

At the hearing below, plaintiff's counsel focused primarily on the liability section in the principle Western Policy, which states:

"A. COVERAGE

We will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.' "

In their complaint, the Cohs also set forth the coverage section in the underinsured motorist endorsement to the Western Policy, referred to above, which states that, "The owner's or driver's liability must result from the ownership, maintenance, or use of the 'underinsured motor vehicle.' " The trial court also focused on this language when it stated, "[a]nd most vehicle policies that I have read use the 'arising out of the use of language.' " We note however that the underinsured motorist endorsement in the Western Policy provides that the "driver's liability must result from the ownership, maintenance, or use of the *underinsured motor vehicle.*' " (Emphasis added.) Our reading of this provision indicates that it has nothing to do with how Cohs, the insured, was using his van at the time of the accident. Instead, this language clearly applies to the liability of the driver using the underinsured motor vehicle. Here, that vehicle was the one driven by Victor Ceron. As a result, the arguments and authorities relied upon by both parties in their original briefs are not dispositive of the issue on appeal.

We determine that the correct question for the purpose of determining coverage under the underinsured motorist endorsement is whether Cohs was "occupying" the van within the meaning of the Western Policy at the time of the accident. This is the language that we find triggers coverage for Cohs. If Cohs was occupying the vehicle as it is defined in the Western Policy, then summary judgment should have been granted in his favor. If, on the other hand, Cohs was not occupying the vehicle at the time of the collision, then summary judgment was appropriately entered in favor of Western. The record indicates that although this question was addressed by Western in the summary judgment pleadings below, it was not addressed by either party until this court ordered the parties to do so. In any event, the definition of "occupying" contained in the Western Policy endorsement has been previously addressed by the Illinois courts. See *Mathey v. Country Mutual Insurance Co.*, 321 Ill. App. 3d 805, 814, 748 N.E.2d 303 (2001); *Greer v. Kenilworth Insurance Co.*, 60 Ill. App. 3d 22, 25, 376 N.E.2d 346 (1978); *Salinas v. Economy Fire & Casualty Co.*, 43 Ill.

App. 3d 509, 510, 357 N.E.2d 556 (1976); *Allstate Insurance Co. v. Horn*, 24 Ill. App. 3d 583, 590, 321 N.E.2d 285 (1974).

In *Greer*, the plaintiff-insured was 10 to 15 feet away from the insured vehicle when she was struck by an uninsured motorist. The *Greer* court evaluated policy language similar to the Western Policy applicable here. In *Greer*, the policy contained uninsured motorist coverage for the insured while that person was "occupying an insured automobile." *Greer*, 60 Ill. App. 3d at 23. "Occupying was defined as 'in or upon, entering into or alighting from' the automobile." *Greer*, 60 Ill. App. 3d at 23.

The *Greer* court found the policy language to be unambiguous because the words quoted above were ordinary and common words. *Greer*, 60 Ill. App. 3d at 25; *Mathey*, 321 Ill. App. 3d at 811. The court further held that "the necessary elements for imposition of liability upon the insurer are the existence of some nexus or relationship between the insured and the covered automobile and, in addition, either actual or virtual physical contact with the insured vehicle." *Greer*, 60 Ill. App. 3d at 25. This test was recently applied by this court in *Mathey*, 321 Ill. App. 3d at 812, and we will implement it in the instant case.

Here, we conclude that a nexus existed between the insured, Cohs, and the covered automobile. The record makes clear that Cohs drove his van to Ron's Marathon in the course of his employment with DRW. While installing the tank monitors, the evidence demonstrated, Cohs constantly walked to and from the van to obtain the parts, tools, and equipment needed. Additionally, Cohs' affidavit and deposition testimony establish the existence of a nexus between Cohs and the insured vehicle.

Our analysis does not end there, however, because we must determine whether Cohs was in actual or virtual contact with his van at the time of the accident. As we noted above, Cohs stated in his affidavit that he was approximately 15 feet away from the van at the time of the accident. He further stated that it was less than two minutes between getting the seal pack from his van and the time he was run over by Victor Ceron. In his deposition testimony, Cohs said that his van was roughly 12 feet from where the accident took place. He also testified that only one minute had elapsed between the time he obtained the seal pack from his van and the moment he was hit.

We observe that there are discrepancies between the facts alleged in Cohs' affidavit and his deposition testimony. Regardless, we conclude that Cohs lacked the requisite contact with the insured vehicle to trigger coverage pursuant to the underinsured motorist endorsement to the Western Policy.

As we noted in *Greer* above, the plaintiff maintained an automobile insurance policy that provided coverage for injuries caused by an uninsured motorist wherever she happened to be. This coverage was excess or secondary in that it only applied to the extent that any other policy available to plaintiff had been exhausted.

The plaintiff and her coworker, Hannah Swanson, took turns driving each other to work. Swanson carried automobile insurance with Aetna Life and Casualty Company (Aetna). The Aetna policy contained uninsured motorist coverage for any person occupying an insured vehicle. "Occupying" in that policy was defined as " 'in or upon, entering into or alighting from' the automobile." *Greer*, 60 Ill. App. 3d at 23.

While returning from work, the plaintiff was a passenger in Swanson's car when it was hit by another vehicle. After the accident, Swanson stopped her vehicle on the right-hand shoulder of an exit ramp. The driver of the other vehicle stopped on the opposite shoulder. The plaintiff, Swanson, and the other driver then inspected the damages to Swanson's vehicle. Finding no apparent damage, the three elected to cross the ramp to view damage to the other vehicle. While waiting to cross the ramp, the plaintiff stood about 10 to 15 feet from the rear of Swanson's vehicle. At that time, she was struck by an uninsured motorist. She made no contact with Swanson's car.

In the trial court, the plaintiff filed separate actions for declaratory judgment against her own insurer and Aetna seeking declarations that each insurer owed her coverage under the uninsured motorist provision in their respective policies. The insurers moved for summary judgment. The trial court granted Aetna's motion on the basis that the plaintiff was not an occupant of the insured vehicle at the time of injury and denied the motion of the plaintiff's insurer. Plaintiff's insurer appealed.

■ As we noted above the appellate court in *Greer* held that the policy language at issue was not ambiguous. *Greer*, 60 Ill. App. 3d at 25. It also established two elements necessary for the imposition of liability upon the insurer: (1) the existence of some nexus between the insured and the covered automobile; and (2) either actual or virtual physical contact with the insured vehicle. *Greer*, 60 Ill. App. 3d at 25.

The appellate court found that the first element had been satisfied because the plaintiff was a passenger in the insured automobile. However, it found that the second element had not been met because the fact that the plaintiff was 10 to 15 feet away from the insured vehicle at the time she was struck amounted to a "total absence of contact between the claimant and the insured vehicle." *Greer*, 60 Ill. App. 3d at 25-26. As a result, the *Greer* court found that the trial

court's ruling in favor of Aetna was proper. *Greer*, 60 Ill. App. 3d at 26.

Similarly, in *Horn*, cited above, the appellate court addressed the issue of whether the claimant was occupying the vehicle for purposes of coverage. Horn was a passenger in a friend's vehicle that was insured by Allstate Insurance Company (Allstate). Horn made a claim for coverage under the uninsured motorist provision in the Allstate policy. The accident occurred when Horn's friend parked the insured vehicle on the northeast side of Clybourn Avenue, a six-lane street in Chicago. The two exited the vehicle and crossed the street and entered a restaurant. Upon leaving the restaurant, Horn attempted to cross the street and was struck by an uninsured motorist approximately 24 feet from the insured vehicle. The appellate court held that "one who is 24 feet from a vehicle is not 'entering into' it, and therefore not 'occupying' it, within the meaning of the policy." *Horn*, 24 Ill. App. 3d at 590.

We find the instant case is analogous to the facts in *Greer* and *Horn*. While we have determined that Cohs had a nexus with the insured vehicle, we conclude that the second prong set out in *Greer*, requiring actual or virtual physical contact with the insured vehicle, was not met.

Cohs stated in his affidavit that he was 15 feet away from his van and that he was struck by the underinsured motorist within two minutes of getting the seal pack from the van. In his deposition, Cohs testified that he was 12 feet from the van and that he was hit by Ceron within one minute after leaving it. In *Greer*, the claimant was between 10 to 15 feet away from the insured vehicle, and in *Horn*, the claimant was 24 feet away from the insured auto. Here, Cohs was between 12 and 15 feet away from the insured van. We therefore conclude that Cohs lacked the actual or virtual contact with the insured vehicle required for invoking the underinsured motorist provision in the Western Policy.

Plaintiff suggests that the definition of an insured in the underinsured motorist endorsement is unduly restrictive when compared to the definition of who qualifies as an insured contained in the liability coverage section. Plaintiff bases this argument on section 143a—2(1) of the Illinois Insurance Code, which requires that carriers offering liability coverage must provide underinsured motorist coverage "in an amount equal to the insured's bodily injury liability limits unless specifically rejected by the insured." 215 ILCS 5/143a—2(1) (West 1998). We agree with plaintiff that section 143a—2(1) requires that the amount of underinsured motorist coverage be equal to the amount of liability coverage provided. *Mijes v. Primerica Life Insurance Co.*,

317 Ill. App. 3d 1097, 1103, 740 N.E.2d 1160 (2000). However, we disagree with plaintiff that the definition of an insured in the underinsured motorist endorsement was unduly restrictive.

Plaintiff contends that this case is analogous to *Doxtater v. State Farm Mutual Automobile Insurance Co.*, 8 Ill. App. 3d 547, 290 N.E.2d 284 (1972). In *Doxtater*, the appellate court held that an uninsured motorist exclusion in that policy, which excluded bodily injury coverage to an insured *while occupying a vehicle not declared in the policy*, was unduly restrictive under section 143a of the Insurance Code. *Doxtater*, 8 Ill. App. 3d at 552. *Doxtater* is not analogous to this case. In the instant case, it is undisputed that the van at issue was covered by the Western Policy.

In addition, *Doxtater* was referred to by the supreme court in *Heritage Insurance Co. of America v. Phelan*, 59 Ill. 2d 389, 395, 321 N.E.2d 2257 (1974). The court however declined to determine *Doxtater*'s "correctness" because of its inapplicability to the facts in that case. *Phelan*, 59 Ill. 2d at 395. Nevertheless, the supreme court stated, section 143a does not place "any restriction on the right of the parties to an insurance contract to agree on which persons are to be the 'insureds' under an automobile insurance policy." *Phelan*, 59 Ill. 2d at 395.

We do not agree with plaintiff that the word "occupying" used in the Western Policy endorsement for the purpose of defining an insured is unduly restrictive. Plaintiff suggests that the broader definition, that the driver's liability must result from the "use" of the underinsured motor vehicle, contained in the liability section governs under section 143a. However, plaintiff fails to provide any authority that the uninsured motorist statute prohibits parties from defining who are insureds under a particular insurance policy. Because our supreme court has provided that parties can designate who are insureds without contravening the uninsured motorist statute, we are unpersuaded by plaintiff's authority to the contrary from other jurisdictions. We therefore find that plaintiff was not an insured under the Western Policy endorsement because he was not occupying the van at the time of the accident.

Even if we accepted plaintiff's broader definition of "use" of the insured vehicle set forth in the liability section of the Western Policy, we determine that plaintiff was not using the van when the injury occurred. As the trial court noted, no nexus existed between the use of the van and plaintiff's injury. The record unequivocally demonstrates that plaintiff was between 12 and 15 feet away from the van at the time the injury occurred. Plaintiff testified that he did not move the van in order to obtain the "rep rate" from the premium tank. No

cautionary cones were placed around the work area. When he was struck, defendant testified that he was kneeling on the pavement and reaching into the premium tank's opening. We are in agreement with the trial court that no nexus existed between the use of the van and plaintiff's injury under these facts.

Having addressed the merits on the "use" question, we need not address the waiver and estoppel arguments raised in plaintiff's supplemental brief. Moreover, our review of the record satisfies us that the parties did not stipulate or agree below that the definition of insured in the liability section of the Western Policy controlled. As a result, no grounds exist for a waiver or estoppel argument by Cohs against Western.

The trial court's order of June 28, 2000, is affirmed.

Affirmed.

GORDON and CAHILL, JJ., concur.