2024 IL App (1st) 230776-U

No. 1-23-0776

Order filed February 2, 2024

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| IN RE ESTATE OF GEORGE GEORGACOPOULOS | ) ) ) | Appeal from the Circuit Court of Cook County. |
| EUGENIA GEORGACOPOULOS, | ) ) | No. 2020 P 7326 |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Honorable Daniel O. Tiernan, Judge, presiding. |
| KYRIAKI GEORGACOPOULOS, | ) ) | |
| Defendant-Appellant. | ) | |

PRESIDING JUSTICE MITCHELL delivered the judgment of the court.
Justice Mikva and Justice Navarro concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court's order appointing plaintiff as administrator of the decedent's estate is affirmed where the antenuptial agreement between the defendant and the decedent is enforceable despite the decedent's breach of a covenant in the agreement.

¶ 2    Defendant Kyriaki Georgacopoulos appeals the circuit court's order appointing plaintiff Eugenia Georgacopoulos as administrator of George Georgacopoulos's estate. Defendant also appeals the denial of her cross-petition to be appointed as administrator and to declare unenforceable her antenuptial agreement with her late husband George Georgacopoulos. The chief

issue on appeal is whether the circuit court erred in enforcing the antenuptial agreement, which provides that defendant and the decedent shall not participate in each other's estates. For the following reasons, we affirm.

¶ 3    Plaintiff Eugenia Georgacopoulos is the daughter of the decedent, George Georgacopoulos, and his first wife. Defendant Kyriaki Georgacopoulos was the decedent's second wife. In 1992, defendant and the decedent entered into an antenuptial agreement.[1] The antenuptial agreement contained the following language:

> "[Decedent] acknowledges that [defendant] has two (2) children from a prior marriage who are presently living with her, and [decedent] agrees that said children shall continue to reside with [defendant] in the marital home to be provided by [decedent], until said children are adults and/or are emancipated ***."

The agreement also included each party's waiver of any rights to participate in the other party's estate upon death:

> "This Agreement is intended by [decedent] and [defendant] as a mutual release of all right, title and interest which either would have or acquire in and to all of the real and personal property of the other during the lifetime or at the death of either of parties hereto, by virtue of the marriage that is contemplated between them under the laws of Illinois ***."

Soon after the antenuptial agreement was signed by both parties, defendant and the decedent were married in Greece. They remained married until the decedent passed away in August 2020.

---

[1]  The terms "antenuptial agreement," "prenuptial agreement," and "premarital agreement" are, in legal parlance, used interchangeably.

¶ 4     In December 2020, plaintiff initiated this action by filing a petition for letters of administration, seeking to be appointed as administrator of the decedent's estate. Defendant filed a cross-petition, requesting that the circuit court instead appoint defendant as administrator of the decedent's estate and declare the antenuptial agreement unenforceable. Defendant argued that the agreement should be held to be unenforceable because, among other reasons, the decedent breached the agreement and did not allow defendant's minor children to reside in the marital home. On March 23, 2023, the circuit court concluded that the antenuptial agreement was enforceable, denied defendant's cross-petition, and appointed plaintiff as administrator of the estate. This timely appeal followed. Ill. S. Ct. R. 304(b)(1) (eff. Mar. 8, 2016).

¶ 5     Defendant argues that the circuit court erred in enforcing the antenuptial agreement because the decedent George Georgacopoulos breached the agreement when he requested that defendant's minor children leave the marital home. A circuit court's factual finding will only be reversed if is against the manifest weight of the evidence, but a circuit court's legal conclusion is reviewed *de novo*. *Mathey ex rel. Mathey v. Country Mutual Insurance Co.*, 321 Ill. App. 3d 805, 815 (2001); *DeStefano v. Farmers Automobile Insurance Ass'n*, 2016 IL App (5th) 150325, ¶ 6.

¶ 6     The circuit court heard testimony from defendant that, after returning from the wedding in Greece, she lived in the marital home with the decedent and her two minor children from her previous marriage: Evangelos Pagunas Jr. and Elefteria Pagunas. Defendant testified that three months later, the decedent told the children to move out of the house. The children moved into the residence of defendant's oldest son. Defendant continued to live in the marital home with the decedent. Additionally, in his evidence deposition, Evangelos Pagunas Jr. testified that both he and his sister lived at the decedent's house for a "couple months" after the marriage, but they left

after the decedent "told us a couple times to pack up our stuff and leave." After hearing this testimony, the circuit court nonetheless enforced the antenuptial agreement.

¶ 7    Defendant argues that since the decedent breached the antenuptial agreement, the entire agreement is unenforceable, and she relies exclusively on *Becker v. Becker*, 241 Ill. 423 (1909).[2] But the breach in *Becker* was to a condition precedent: the husband's covenant to maintain a life insurance policy was a condition precedent to the performance of the wife's covenant, and because the husband had failed to maintain the life insurance policy as promised, he could not enforce the agreement to receive title to all the wife's property after she had died. *Id.* at 432-33. The two covenants were "mutual covenants and were dependent upon each other." *Id.* at 431. A condition precedent is a condition which must be performed by one party to an existing contract before the other party is obligated to perform under that contract. *Owen v. Village of Maywood*, 2023 IL App (1st) 220350, ¶ 26. When a contract contains an express condition precedent, strict compliance is required, and the contract is not enforceable until the condition is performed. *Id.* In contrast, the provision breached here was an independent contractual provision (not a condition precedent). See *Foreman State Trust & Savings Bank v. Tauber*, 348 Ill. 280, 292-93 (1932) (holding that *Becker* is inapplicable because the covenants in the antenuptial agreement were independent rather than mutual and dependent covenants).

---

[2] Prenuptial agreements executed after January 1, 1990 are governed by the Illinois Uniform Prenuptial Agreement Act, which generally makes such agreements easier to form and to enforce. See 750 ILCS 10/1, *et seq.* The parties here have offered no argument under the Act.

¶ 8    Defendant contends that the circuit court made an unsupported factual finding that the decedent had not breached the antenuptial agreement, but that is not accurate.[3] The circuit court expressly declined to invalidate the agreement based on the decedent's breach:

> "[H]er minor children were kicked out of her house 28 years ago, and for that entire time for those 28 years from that date until the decedent passed she did nothing to challenge that. *** She did nothing for 28 years. And then after the decedent dies, she comes in and wants to invalidate that.
>
> Now, I'm not sure why she did it that way, but in this Court's mind that is not enough to invalidate a prenuptial agreement that was bargained in good faith while the decedent was alive, and he survived for 28 years after that. So she could have challenged it at any time during that time period. So to invalidate it based on that small alleged violation of the agreement, the Court's not going to do that."

¶ 9    The question is not whether George Georgacopoulos breached the antenuptial agreement (clearly he did), but whether his breach was material. The rules governing contract interpretation apply to antenuptial agreements. *In re Marriage of Woodrum*, 2018 IL App (3d) 170369, ¶ 108; *Kranzler v. Kranzler*, 2018 IL App (1st) 171169, ¶ 39. Only a material breach of an agreement will justify the nonenforcement of the entire agreement. *Direct Auto Insurance Co. v. O'Neal*, 2022 IL App (1st) 211568, ¶ 15 ("A breach is material when it is so substantial and fundamental as to

---

[3] Some of the confusion stems from the circuit court's comment on the quality of the evidence introduced to establish the decedent's breach and the weight that attaches to an evidence deposition. ("The son is not here to testify, you know, a transcript is not as good as live testimony, so I don't know."). An evidence deposition *is* trial testimony, see Ill. S. Ct. R. 212(b), and as juries are routinely instructed, "[y]ou should give this testimony the same consideration you would give it had the witness personally appeared in court." Illinois Pattern Jury Instructions, Civil, No. 2.01 (Supp. 2020).

defeat the objects of the parties in making the agreement or when the failure to perform renders performance of the rest of the contract different in substance from the original agreement") (Internal quotation marks omitted.); *Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 70 (2006) ("Under general contract principles, a material breach of a contract provision by one party may be grounds for releasing the other party from his contractual obligations.").

¶ 10    The fact that defendant waited 28 years before raising the decedent's breach was paramount in the circuit court's conclusion that the breach was immaterial. The determination of whether a breach is material is a complex question of fact that depends on a variety of factors including the "inherent justice of the matter" and prejudice to the nonbreaching party. *Wolfram Partnership, Ltd. v. LaSalle National Bank*, 328 Ill. App. 3d 207, 223 (2001); *O'Neal*, 2022 IL App (1st) 211568, ¶ 15. The analysis turns on whether the breach was so significant as to defeat the bargained-for objectives of the parties. *O'Neal*, 2022 IL App (1st) 211568, ¶ 15. The antenuptial agreement here gives us guidance as to the significance of the breach: the agreement expressly provides that the decedent has "no legal obligation to provide any support or maintenance" for defendant's children, and that "any contribution made by [decedent] towards the cost of providing adequate housing and support for [defendant's children] shall be wholly [*sic*] voluntary on his part." This language supports the conclusion that the decedent's support for defendant's children was not a fundamental objective of the parties when drafting the terms of the agreement.

¶ 11    Against this backdrop, the law and the evidence support the circuit court's conclusion that the decedent's "small alleged violation" nearly 30 years ago was an insufficient basis to invalidate the entire antenuptial agreement. See *In re Marriage of Byrne*, 179 Ill. App. 3d 944, 950 (1989) (holding that the delay in claiming breach undermined the wife's effort to invalidate the antenuptial

agreement because the "time for her to have acted was *** during the marriage, not after.");

*Genung v. Hagemann*, 103 Ill. App. 2d 409, 417-18 (1968) (holding that even though the decedent husband breached the antenuptial agreement by failing to make the wife the beneficiary of an insurance policy, the agreement was still enforceable, and the wife was barred under the terms of the agreement from taking her share of the husband's estate).

¶ 12     Under the Probate Act of 1975, a surviving spouse is entitled to preference in obtaining the issuance of letters of administration. 755 ILCS 5/9-3 (West 2022). However, in the antenuptial agreement, defendant waived any right to participate in the decedent's estate. See 750 ILCS 10/4(a)(3) (West 2022). Since the antenuptial agreement is enforceable, the circuit court did not err in appointing plaintiff as administrator of the decedent's estate.

¶ 13     The judgement of the circuit court of Cook County is affirmed.

¶ 14     Affirmed.