No. 2--06--1227                    Filed: 10-29-07

---

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

---

| | | |
|---|---|---|
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 05--MR--192 |
| GLEN JERIS, | ) ) ) | Honorable Michael J. Sullivan, |
| Defendant-Appellant. | ) | Judge, Presiding. |

---

PRESIDING JUSTICE GROMETER delivered the opinion of the court:

Plaintiff, American Family Mutual Insurance Co., sued defendant, Glen Jeris, seeking a declaration that a policy it issued to his parents did not provide uninsured motorist coverage. Defendant was injured while a passenger in a car that was being driven without the owner's permission. The trial court granted plaintiff summary judgment on plaintiff's claim that the policy excluded coverage for someone using a car without permission. Defendant appeals, contending that the trial court erred in holding that defendant was "using" the car when he was injured. We reverse.

In the summer of 2001, defendant and his friends Joseph Eldridge and Kevin Byrnes were students at Prairie Ridge High School. Joe Maraccini was a teacher at Prairie Ridge. Eldridge had agreed to "house sit" for Maraccini while the latter was on vacation. Eldridge's duties included watering plants, feeding fish, and mowing the lawn. One day, Byrnes and defendant accompanied Eldridge to Maraccini's house while Eldridge took care of his chores. At some point, Eldridge

produced the keys to Maraccini's Saab, and the three decided to drive to a nearby Steak & Shake. Byrnes was elected to drive. On the way back, they were involved in an accident in which defendant was severely injured.

Plaintiff had issued a policy to defendant's parents, insuring vehicles that they owned. The policy provided uninsured motorist coverage to anyone defined as an "insured person." However, it excluded from the definition of "insured person" the following:

"a. Any person, other than a **relative**, using **your insured car** without **your** permission.

b. Any person, other than a **relative**, using **your insured car** with **your** permission, but who exceeds the scope of that permission.

c. Any person using a vehicle without the permission of the person having lawful possession.

d. Any person using a vehicle with the permission of the person having lawful possession, but who exceeds the scope of that permission."

The policy's general provisions defined "use" as "ownership, maintenance or use." The policy also defined "occupying" as "in, on, getting into or out of and in physical contact with."

Defendant filed a claim for uninsured motorist benefits under this policy. Plaintiff filed an action seeking a declaration that Byrnes's and Maraccini's insurance carriers were liable to defendant. In that case, the court found that Byrnes did not have permission to drive Maraccini's car and that no coverage was available under either policy. Plaintiff then instituted this action for a declaration that defendant was not entitled to uninsured motorist benefits because, as a passenger, he was "using" the Saab without permission.

Defendant responded that a passenger is not "using" a vehicle within the meaning of the policy. He contended that, under the policy's general definitions, he was "occupying" the car and that

no policy provision excluded coverage for unauthorized occupants. The trial court disagreed and entered summary judgment for plaintiff, holding that defendant was using the car at the time of the accident. Defendant appeals.

Defendant contends that the trial court erred by holding that he was "using" the car at the time of the accident, rather than "occupying" it. Defendant points out that the policy defines "occupying" and "use" differently and that, under the policy's definitions, use requires some degree of control that a passenger does not have. He contends that, at best, the policy is ambiguous and must be construed against plaintiff, which drafted it. We agree.

This issue requires us to interpret the meanings of "use" and "occupying" as used in the insurance policy. An insurance policy is a contract, and the primary object of contract construction is to ascertain and give effect to the parties' intentions as expressed in their agreement. American States Insurance Co. v. Koloms, 177 Ill. 2d 473, 479 (1997). If an insurance policy is clear and unambiguous, we must give the language its plain meaning, but if its terms are ambiguous, they should be construed against the insurer, which drafted the policy. Koloms, 177 Ill. 2d at 479.

Moreover, summary judgment is proper when the pleadings, depositions, and affidavits demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2--1005(c) (West 2004). We review de novo an order granting summary judgment. Outboard Marine Corp. v. Liberty Mutual Insurance Co., 154 Ill. 2d 90, 102 (1992).

We agree with defendant that under the particular policy language at issue here, he was "occupying" the vehicle and not "using" it. As defendant points out, the mere fact that the policy defines both "use" and "occupying" indicates that they must have been intended to have different

meanings. The policy defines "use" as "ownership, maintenance or use." Disregarding the redundant reference to "use" in the definition, the policy defines "use" as requiring some degree of ownership or maintenance. Under normal circumstances, a passenger in a vehicle does not own or maintain it. Moreover, defining "use" as including "use" does little to clear up the confusion. On this basis alone, the term might be considered ambiguous.

In addition, this court should interpret a contract so that no term is rendered meaningless. Atwood v. St. Paul Fire & Marine Insurance Co., 363 Ill. App. 3d 861, 864 (2006). Under plaintiff's construction, the definition of "occupy" would be meaningless because it would always be subsumed by the definition of "use."

It appears that no Illinois case has considered the precise question whether an automobile passenger is using or merely occupying it. In Orrill v. Garrett, 100 Ill. App. 2d 194, 197 (1968), on which the trial court relied, the court stated, "An automobile is being used, for example, by one riding in it although another is driving or operating it." Defendant responds that the statement is dicta and that, in any event, more recent cases have used a more restrictive definition of "use" as requiring "operation" or "control of operation." See Pekin Insurance Co. v. Fidelity & Guaranty Insurance Co., 357 Ill. App. 3d 891, 897 (2005); Thomas v. Aetna Casualty & Surety Co., 28 Ill. App. 3d 363, 367 (1975).

None of these cases is particularly persuasive here, as none involved an automobile passenger seeking uninsured motorist coverage under his own or his family's policy, nor did any involve similar policy language. At most, they support the conclusion that "use" has more than one reasonable meaning, thus rendering the policy ambiguous.

Plaintiff cites a dictionary definition of "use" as meaning "[t]o put to some purpose: avail oneself of <use the bus to get to work>." Webster's II New College Dictionary 1214 (1999). However, another definition of "use" in the same dictionary is "to bring or put into service or action: Employ <use a pen> <use your imagination>." Webster's II New College Dictionary 1214 (1999). The dictionary definitions support both parties' interpretations. The first-quoted definition (actually listed second in the dictionary) defines use consistently with being a passenger. On the other hand, the second quoted definition implies having control of something, consistent with being a driver. Because the dictionary indicates that both parties' constructions of the policy are reasonable, it actually supports defendant's argument that the policy is ambiguous and should be construed in favor of coverage.

We emphasize that defendant here was making a claim under his own family's policy, for which his parents paid premiums. There are obviously valid reasons for Byrnes's and Maraccini's insurers to deny coverage given that Byrnes (as found in the previous declaratory judgment action) used the car without the owner's permission. However, from plaintiff's perspective, the fact that Byrnes lacked permission to drive the car (and thus was uninsured) is merely fortuitous.

Further, it is reasonable to treat drivers and passengers differently in this situation. A driver of a car will almost necessarily know whether he has permission to do so. Therefore, it is reasonable to deny insurance coverage to the driver--from either his own or the owner's policy--if he does so without the owner's permission. On the other hand, a passenger in a car may or may not know whether the driver has permission to drive the car. If a driver operating a car with the ignition key offers a passenger a ride, it is reasonable for the passenger to assume that the driver either owns the car or has the owner's permission to drive it. It makes no sense to require someone accepting a ride

in a car to determine at his peril whether the driver is authorized to drive the car, denying the passenger uninsured motorist coverage if it turns out that the driver lacks permission.

We note that defendant suffered serious head injuries in the accident and had no memory of the events immediately preceding the accident. However, he testified at his deposition that he would not have gotten in the car had he known that the driver did not have permission to take it.

Illinois law requires insurers to offer uninsured motorist coverage in all automobile policies. 215 ILCS 5/143a (West 2004). "[T]he intent of the legislature in enacting section 143a was to ensure that persons injured by an uninsured motorist are protected at least to the extent that compensation is made available to persons injured by a motorist insured for the minimum legal limits." American Service Insurance Co. v. Pasalka, 363 Ill. App. 3d 385, 390 (2006), citing Severs v. Country Mutual Insurance Co., 89 Ill. 2d 515, 519 (1982). The statutory purpose cannot be circumvented by inserting a contrary or restricting provision in an insurance policy. Severs, 89 Ill. 2d at 520; Pasalka, 363 Ill. App. 3d at 390.

The purpose of requiring uninsured motorist coverage is to make coverage available on as broad a basis as possible where no other coverage is available. That purpose is obviously defeated where an unauthorized driver is denied coverage and the passengers are denied coverage under their own policies because the driver was unauthorized (and thus had no insurance).

The judgment of the circuit court of McHenry County is reversed.

Reversed.

McLAREN and BYRNE, JJ., concur.