# Illinois Official Reports

## Appellate Court

*Direct Auto Insurance Co. v. Merx*, 2020 IL App (2d) 190050

| | |
|---|---|
| Appellate Court Caption | DIRECT AUTO INSURANCE COMPANY, Plaintiff-Appellant, v. ROYCELYNNE MERX, Defendant-Appellee. |
| District & No. | Second District<br>No. 2-19-0050 |
| Filed | July 22, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 17-MR-934; the Hon. Kevin T. Busch, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | William H. Ransom, of Newman Ransom LLC, of Chicago, for appellant.<br><br>Michael Silverman, of Horwitz, Horwitz & Associates, Ltd., of Chicago, for appellee. |
| Panel | PRESIDING JUSTICE BIRKETT delivered the judgment of the court, with opinion.<br>Justices Schostok and Brennan concurred in the judgment and opinion. |

**OPINION**

¶ 1        Plaintiff, Direct Auto Insurance Company (Direct Auto), appeals the circuit court's orders denying its motion for summary judgment and granting the motion for judgment on the pleadings filed by defendant, Roycelynne Merx.[1] Direct Auto argues on appeal that (1) the plain and unambiguous language of the vehicle insurance policy it issued to Merx provides uninsured-motorist coverage only when the insured is an occupant in her own vehicle covered under the policy and (2) the circuit court erred in concluding that Illinois's public policy as reflected in section 143a of the Illinois Insurance Code (215 ILCS 5/143a (West 2014)) mandated uninsured-motorist coverage for the insured stemming from the accident in this case. For the following reasons, we affirm.

¶ 2                                           I. BACKGROUND

¶ 3        On June 18, 2015, Merx was injured when she was a passenger in a 2013 Chevrolet Cruze that was owned and operated by Brandon Motley and Motley struck another vehicle while attempting to cross an intersection in Evanston. Motley was both an uninsured motorist and at fault for the accident. Merx filed a claim for uninsured-motorist coverage under her personal automobile insurance policy with Direct Auto, the insurer of her 2012 Chevrolet Sonic. Her vehicle was not involved in the collision. Merx's policy provided for automobile liability coverage and uninsured-motorist coverage for the period of January 15, 2015, to July 15, 2015, and each coverage type provided $25,000 in coverage for bodily injury or death per person and a maximum of $50,000 per accident.

¶ 4        On July 21, 2017, Direct Auto filed a complaint for declaratory judgment, arguing that there was no uninsured-motorist coverage for the accident because, at the time of the accident, Merx was not an occupant in an "insured automobile" as that term is defined in the policy. Specifically, it argued that there was no uninsured-motorist coverage because Merx did not occupy the 2012 Chevrolet Sonic covered by her policy at the time of the accident. Direct Auto attached to the complaint a copy of the policy, which pertinently provides as follows:

> "PART II—UNINSURED MOTORIST COVERAGE
>
> COVERAGE C: UNINSURED MOTORIST BODIL [*sic*] INJURY and
>
> COVERAGE D: UNINSURED MOTORIST PROPERTY DAMAGE.
>
> If you have paid for this coverage(s), have provided prompt and proper notice of the loss pursuant to Condition 3, and have submitted your written claim by certified mail, return receipt requested, for Uninsured Motorist coverage within two (2) years from the date of the accident, unless otherwise set forth herein, we will pay all sums (up to your applicable policy limits) which the named insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of *** bodily injury *** sustained by the insured provided the damages were:
>
> (1) caused by accident; and
>
> (2) *while 'you' are an occupant in an 'insured automobile' as defined herein*, and

---

[1]Both parties on appeal spell defendant's first name "Roycelyne." However, her name appears as "Roycelynne" in the record and in the insurance policy. We assume the latter is correct.

(3) were as a result of the ownership, maintenance or use of such uninsured motor vehicle.

\* \* \*

'insured automobile' means:

(a) an owned automobile as defined under Part I of this policy for which a specific premium charge for Uninsured Motorist coverage has been paid." (Emphasis added.)

Part I of the policy, in turn, defines "owned automobile" as "a private passenger, farm, or utility automobile described in this policy."

¶ 5    Merx answered the complaint for declaratory judgment on April 16, 2018, admitting that she was a passenger in the 2013 Chevrolet Cruze driven by Motley during the accident but denying Direct Auto's assertion that there was no uninsured-motorist coverage.

¶ 6    Direct Auto moved for summary judgment on May 21, 2018, arguing that the plain and unambiguous language of the policy provided uninsured-motorist coverage only if the insured occupied an "insured vehicle," here, the 2012 Chevrolet Sonic, at the time of the accident. Because there was no dispute that Merx did not occupy the 2012 Chevrolet Sonic at the time of the accident, Direct Auto argued that there was no uninsured-motorist coverage and thus Direct Auto was entitled to judgment as a matter of law.

¶ 7    Merx responded to the motion for summary judgment on September 6, 2018. She asserted that the terms of the uninsured-motorist provision were contrary to section 143a of the Insurance Code and violated Illinois public policy because the provision would leave her with no remedy for her injuries, even though she had paid for uninsured-motorist coverage. She stressed that, because Motley was both at fault for the accident and uninsured, she could look only to her own insurer for coverage. In reply, Direct Auto argued that, following the 1995 amendment to section 143a, uninsured-motorist coverage is not absolute and parties to an insurance contract may agree to reasonable limits on such coverage.

¶ 8    On October 18, 2018, the circuit court denied Direct Auto's motion for summary judgment. Pertinently, the order provided as follows:

"The court having determined the 1995 amendment to [section 143a of the Insurance Code] applied to owned vehicles, not listed in the policy, and the statute and public policy preclude denial of uninsured coverage for an insured (Merx) when she is a passenger in an uninsured vehicle, involved in a collision, and the driver of the uninsured vehicle is at-fault."

¶ 9    On October 30, 2018, Merx filed a motion for judgment on the pleadings pursuant to section 2-615(e) of the Code of Civil Procedure (735 ILCS 5/2-615(e) (West 2018)). She argued that the legislative intent and purpose behind section 143a of the Insurance Code required coverage for the accident, that the terms of the policy directly conflicted with said section, and that the 1995 amendment thereto did not apply to the facts of the case because the 2013 Chevrolet Cruze was not owned by, furnished, or available for Merx's regular use and Motley was not a resident relative or resident spouse. Direct Auto adopted its motion for summary judgment and its response to Merx's reply to stand as its response. The circuit court granted Merx's motion for judgment on the pleadings on December 18, 2018, and found that Merx was entitled to uninsured-motorist coverage. Direct Auto timely appealed.

¶ 10                                    II. ANALYSIS

¶ 11       This appeal comes before us following the circuit court's entry of judgment on the parties' motions seeking a judgment on the pleadings and summary judgment. "Either a judgment on the pleadings or summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Hess v. Estate of Klamm*, 2020 IL 124649, ¶ 14. A motion for a judgment on the pleadings is like a motion for summary judgment, but it is limited to the pleadings. *Allstate Property & Casualty Insurance Co. v. Trujillo*, 2014 IL App (1st) 123419, ¶ 15. The standard of review is *de novo* under either type of motion. *Id.*

¶ 12       Direct Auto's argument on appeal is twofold. First, it argues that the circuit court erred in denying its motion for summary judgment because the plain and unambiguous language of the insurance policy provides uninsured-motorist coverage only for accidents that occur while the insured is an occupant in the vehicle covered under the policy for which a specific premium charge for uninsured-motorist coverage has been paid. In other words, it asserts that the policy provides uninsured-motorist coverage to Merx only for injuries sustained while occupying the 2012 Chevrolet Sonic (the only vehicle for which Merx was paying a specific premium for insured-motorist coverage under the policy). Because it is undisputed that she did not occupy the 2012 Chevrolet Sonic at the time of the accident, Direct Auto maintains that summary judgment should have been entered in its favor. Second, it asserts that neither public policy nor the Insurance Code precludes the denial of coverage to Merx because section 143a of the Insurance Code was amended in 1995 such that, in Direct Auto's view, limitations on uninsured-motorist coverage do not violate public policy. Merx counters that Illinois law mandates that she be entitled to uninsured-motorist coverage, and she points to a string of cases that predate the 1995 amendment to section 143a.

¶ 13       We begin by examining the terms of the insurance policy, the construction of which presents a question of law, which we review *de novo*. See *Shefner v. Illinois Farmers Insurance Co.*, 243 Ill. App. 3d 683, 686 (1993). Our primary objective in construing the language of an insurance policy is to ascertain and give effect to the parties' intentions as set forth in their agreement. *Rosenberg v. Zurich American Insurance Co.*, 312 Ill. App. 3d 97, 101 (2000). In interpreting the meaning of provisions in an insurance policy, we construe the policy as a whole, keeping in mind the risk undertaken, the subject matter that is insured, and the purpose of the contract. *Id.* Where the policy language is clear and unambiguous, the language must be given its plain, ordinary, and popular meaning. *Id.* If, however, the terms are ambiguous, they are construed strictly against the insurer who drafted the policy and in favor of the insured. *Menke v. Country Mutual Insurance Co.*, 78 Ill. 2d 420, 423 (1980).

¶ 14       As noted, Direct Auto maintains that summary judgment should have been entered in its favor because the plain language of the policy's uninsured-motorist provision establishes that "there is only uninsured-motorist coverage when the insured is occupying an insured vehicle, [which is] a 2012 Chevrolet Sonic." Merx makes no attempt to refute this assertion, and she does not argue that the uninsured-motorist provision is ambiguous. We agree with Direct Auto that, on its face, the uninsured-motorist provision affords Merx no coverage for the June 18, 2015, accident. The policy unambiguously provides uninsured-motorist coverage for bodily injury, provided that the injuries were "(1) caused by accident; and (2) while 'you' are an occupant in an 'insured automobile' as defined herein, and (3) were as a result of the ownership, maintenance or use of such uninsured motor vehicle." The policy pertinently

defines "you" as "the named insured," meaning Merx, and it defines "insured automobile" as "an owned automobile as defined under Part I of this policy for which a specific premium charge for Uninsured Motorist coverage has been paid." Part I of the policy defines "owned automobile" as "a private passenger, farm or utility automobile described in this policy," meaning the 2012 Chevrolet Sonic. As Direct Auto stresses, it is uncontested that Merx did not occupy the 2012 Chevrolet Sonic during the accident but, instead, occupied the 2013 Chevrolet Cruze.

¶ 15    However, the fact that the terms of the policy preclude Merx from receiving uninsured-motorist coverage is not dispositive of the issue. It is well established that, "[i]f the insurance policy terms are clear and unambiguous, they must be enforced as written, *unless doing so would violate public policy*." (Emphasis added.) *Thounsavath v. State Farm Mutual Automobile Insurance Co.*, 2018 IL 122558, ¶ 17. "The construction of the terms of an insurance policy and whether the insurance policy comports with statutory requirements present questions of law that are properly decided on a motion for summary judgment." *Id.* ¶ 15. We review *de novo* "whether a provision in a contract, insurance policy, or other agreement is invalid because it violates public policy." *In re Estate of Feinberg*, 235 Ill. 2d 256, 263 (2009). Public policy is necessarily a question of law. *Id.* Accordingly, we next evaluate whether the denial of Merx's claim for uninsured-motorist coverage under the circumstances of this case comports with the pertinent statutes and their underlying purpose.

¶ 16    Our state constitution, statutes, and judicial decisions reflect our public policies. *Thounsavath*, 2018 IL 122558, ¶ 17. Although an insurance policy is a contract, its terms must comply with the statutory requirements in effect at the time the policy was issued. *Id.* ¶ 30. Insurers have no right to depart from valid statutory requirements in their policies, and contractual terms that do so are void and unenforceable. *Id.* ¶¶ 17, 30. Likewise, the terms of an insurance policy may not circumvent the purpose of a statute in effect when the policy is issued. *Id.* ¶ 17. However, an insurance contract "will not be invalidated unless it is clearly contrary to what the constitution, the statutes, or the decisions of the courts have declared to be the public policy of Illinois or unless the agreement is 'manifestly injurious to the public welfare.' " (Internal quotation marks omitted.) *Goldstein v. Grinnell Select Insurance Co.*, 2016 IL App (1st) 140317, ¶ 16 (quoting *Phoenix Insurance Co. v. Rosen*, 242 Ill. 2d 48, 55 (2011)). An insured seeking to invalidate an agreement as against public policy bears a "heavy burden" of demonstrating a violation of public policy. *Id.*

¶ 17    We turn now to an overview of the applicable law. Subject to certain exceptions not pertinent here, section 7-601(a) of the Illinois Safety and Family Financial Responsibility Law (Financial Responsibility Law) (625 ILCS 5/7-601(a) (West 2014)), which is part of the Illinois Vehicle Code, requires liability insurance coverage for all motor vehicles operated or registered in Illinois. At the time of the accident in this case, the Financial Responsibility Law mandated that a liability insurance policy include, at a minimum, $25,000 in coverage for bodily injury or death to one person as a result of any one accident, $50,000 for bodily injury or death of all persons as a result of any one accident, and $20,000 for damage to the property of others as a result of any one accident. See *id.* §§ 7-203, 7-317(b)(3). A liability insurance policy is required to meet certain coverage requirements in that it must "designate by explicit description or by appropriate reference, all motor vehicles with respect to which coverage is thereby intended to be granted," as well as "insure the person named therein and any other person using or responsible for the use of such motor vehicle or vehicles with the express or

implied permission of the insured." *Id.* § 7-317(b)(1), (b)(2). The "principal purpose" of the liability insurance requirement is " 'to protect the public by securing payment of their damages.' " *Phoenix Insurance Co.*, 242 Ill. 2d at 57 (quoting *Progressive Universal Co. of Illinois v. Liberty Mutual Fire Insurance Co.*, 215 Ill. 2d 121, 129 (2005)).

¶ 18    Section 143a of the Insurance Code requires a motor vehicle liability policy to also include uninsured-motorist and hit-and-run motor vehicle coverage. 215 ILCS 5/143a (West 2014). The uninsured-motorist coverage must be in an amount equal to the insured's bodily injury liability limits unless the insured has bodily injury coverage in excess of the statutory minimum and specifically rejects that additional amount of uninsured-motorist coverage. *Id.* § 143a-2(1). We note that, here, Merx carried the minimum amount of coverage for liability and uninsured-motorist coverage allowed by law—$25,000.

¶ 19    Section 143a provides, in relevant part, as follows:

"(1) No policy insuring against loss resulting from liability imposed by law for bodily injury *** suffered by any person arising out of the *** use of a motor vehicle that is designed for use on public highways *** shall be *** issued for delivery in this State unless coverage is provided *** for bodily injury *** of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles *** because of bodily injury *** resulting therefrom. Uninsured motor vehicle coverage does not apply to bodily injury *** of an insured while occupying a motor vehicle owned by, or furnished or available for the regular use of the insured, a resident spouse or resident relative, if that motor vehicle is not described in the policy under which a claim is made or is not a newly acquired or replacement motor vehicle covered under the terms of the policy." *Id.* § 143a.

¶ 20    Our supreme court has stressed that this section is plain and unambiguous in mandating that every policy contain the specified uninsured-motorist coverage. *Thounsavath*, 2018 IL 122558, ¶ 33. Illinois law and public policy regarding uninsured-motorist coverage provide that no automobile liability insurance policy shall be issued without coverage protecting against damages cause by uninsured motorists. *Id.* (citing *Squire v. Economy Fire & Casualty Co.*, 69 Ill. 2d 167, 176 (1977)). Uninsured-motorist coverage must extend to all who are insured under the policy's liability provisions. *Id.* ¶ 19. "If a person constitutes an insured for purposes of liability coverage under a policy, the insurance company may not, either directly or indirectly, deny uninsured-motorist coverage to that person." *Schultz v. Illinois Farmers Insurance Co.*, 237 Ill. 2d 391, 403 (2010).

¶ 21    Nevertheless, "[n]either the statute nor the case law places any restriction on the right of the parties to an insurance contract to agree on which persons are to be the 'insureds' under an automobile insurance policy. [Citation.] However, once a person qualifies as an insured for purposes of the policy's bodily injury liability provisions, she must be treated as an insured for purposes of uninsured and underinsured motorist coverage as well." *Thounsavath*, 2018 IL 122558, ¶ 31. Section 143a of the Insurance Code protects insured parties but does not extend its protection to those who are uninsured. *State Farm Mutual Automobile Insurance Co. v. George*, 326 Ill. App. 3d 1065, 1068 (2002).

¶ 22    It is well established that uninsured-motorist coverage is required so that the policyholder is placed in substantially the same position he or she would occupy if injured or killed in an accident where the party at fault carried the minimum liability coverage required by law. *Phoenix Insurance Co.*, 242 Ill. 2d at 57. Section 143a of the Insurance Code was enacted " 'to

ensure that persons injured by an uninsured motorist are protected at least to the extent that compensation is made available to persons injured by a motorist insured for the minimum legal limits.' " *American Family Mutual Insurance Co. v. Jeris*, 376 Ill. App. 3d 1070, 1074-75 (2007) (quoting *American Service Insurance Co. v. Pasalka*, 363 Ill. App. 3d 385, 390 (2006)); see also *Heritage Insurance Co. of America v. Phelan*, 59 Ill. 2d 389, 395 (1974) ("[T]he legislative intent [(behind section 143a)] was to provide extensive uninsured-motorist protection for those who are 'insureds' under an automobile liability policy."). This statutory purpose may not be circumvented by inserting into a policy a contrary or restricting provision. *Phoenix Insurance Co.*, 242 Ill. 2d at 57. In other words, the uninsured-motorist coverage Illinois law requires may not be whittled away by an unduly restrictive definition. *Thounsavath*, 2018 IL 122558, ¶ 33 (citing *Barnes v. Powell*, 49 Ill. 2d 449, 453 (1971)). If the amount of uninsured-motorist coverage exceeds the statutory minimums required for liability insurance, the policy must also include underinsured coverage equal to the amount of uninsured-motorist coverage. 215 ILCS 5/143a-2(4) (West 2014).

¶ 23    Liability, uninsured motorist, and underinsured motorist provisions are "inextricably linked." *Schultz*, 237 Ill. 2d at 404. All three types of coverage "serve the same underlying public policy: ensuring adequate compensation for damages and injuries sustained in motor vehicle accidents." *Phoenix Insurance Co.*, 242 Ill. 2d at 58.

¶ 24    Here, applying the insurance policy's uninsured-motorist provision to the June 18, 2015, accident would impermissibly thwart the legislative purpose behind section 143a of the Insurance Code by foreclosing the insured, Merx, from being placed in substantially the same position she would have occupied had she been injured in an automobile accident where the party at fault, Motley, carried the minimum liability coverage required by law. See *id.* at 57; *American Family Mutual Insurance Co.*, 376 Ill. App. 3d at 1074. Under the circumstances of this case, judgment on the pleadings in favor of Merx was appropriate, and the circuit court did not err in denying Direct Auto's motion for summary judgment and granting Merx's motion for judgment on the pleadings.

¶ 25    *Doxtater v. State Farm Mutual Automobile Insurance Co.*, 8 Ill. App. 3d 547 (1972), relied on by Merx, is instructive. There, an insured was injured when the motorcycle he was riding collided with an automobile driven by an uninsured motorist. *Id.* at 549. The motorcycle was not listed on the declarations page of the insured's automobile insurance policy,[2] and the policy contained an "owned vehicle" exclusion that excluded bodily injury coverage to an insured while occupying a motor vehicle owned by the named insured or any household resident if the vehicle was not an " 'owned vehicle,' " meaning a " 'motor vehicle *** described in the declarations.' " *Id.* at 548-49. The plaintiff argued that section 143a of the Insurance Code required uninsured-motorist coverage for all "insureds" under an automobile policy, regardless of whether the insured occupied a vehicle included in the policy. Explicitly relying on the legislative intent behind section 143a as expressed by our supreme court in *Barnes*, the *Doxtater* court held that the exclusion conflicted with section 143a and was unenforceable. *Id.* at 552; see also *Cohs v. Western States Insurance Co.*, 329 Ill. App. 3d 930, 937 (2002) (stating that *Doxtater* "held that an uninsured motorist exclusion in that policy, which excluded bodily injury coverage to an insured *while occupying a vehicle not declared*

---

[2]The court explicitly assumed that the plaintiff was an "insured" under the policy and that the motorcycle was not an " 'owned motor vehicle.' " *Doxtater*, 8 Ill. App. 3d at 549.

*in the policy*, was unduly restrictive under section 143a of the Insurance Code" (emphasis in original)). In reaching this ruling, the *Doxtater* court stated:

"Although we recognize the facts of *Barnes v. Powell* are distinguishable from the facts at bar, we nonetheless cannot overlook the Supreme Court's statements therein regarding the legislative intent behind Section 143a. The expansive interpretation applied by a majority of that court leads us to conclude that, presented with the issue at bar, our Supreme Court would interpret Section 143a of the Insurance Code as a direction to insurance companies to provide uninsured motor vehicle coverage for 'insureds,' *regardless of whether, at the time of injury, the insureds occupied or operated vehicles declared in the subject policy*." (Emphasis added.) *Doxtater*, 8 Ill. App. 3d at 552.

¶ 26    The *Doxtater* court's reasoning was adopted subsequently by our supreme court, as recognized in *Squire*, 69 Ill. 2d at 179. There, the plaintiff pedestrian was injured by an uninsured motorist. The plaintiff was insured under both a primary policy, which covered the family automobile, and an endorsement thereto, which provided coverage for a second family automobile and for which an additional premium was paid. *Id.* at 171-72. The primary policy and the endorsement included uninsured-motorist coverage. The primary policy excluded coverage for " 'bodily injury to an insured while occupying an automobile (other than an insured automobile) owned by the named insured or a relative, or through being struck by such an automobile.' " *Id.* at 171. " 'Insured automobile' " meant " 'an automobile described in the policy for which a specific premium charge indicates that coverage is afforded.' " *Id.* The endorsement included a similar exclusion.

¶ 27    The plaintiff argued she was entitled to stack the uninsured-motorist coverage provided under both the primary policy and the endorsement. In response, the defendant insurance company asserted that the endorsement did not provide additional indemnification but, instead, insured against accidents caused by uninsured motorists while the insureds occupied the second vehicle. It further argued that the purpose of the endorsement was to allow the insureds to collect the coverage that was barred by the exclusion in the primary policy. *Id.* at 173-74. Plaintiff maintained that she already had this coverage under the primary policy because the exclusion violated section 143a, and she argued that the payment of the additional premium for the endorsement necessarily purchased additional uninsured-motorist coverage. *Id.* at 173.

¶ 28    Relying on *Doxtater*, the court in *Squire* held that the exclusion in the primary policy was unenforceable insofar as it "would make coverage dependent upon the insured not being in a vehicle unlisted in the policy." *Id.* at 179. Stated another way, the exclusion impermissibly made coverage dependent upon the insured being in a vehicle listed in the policy. See *Roby v. Illinois Founders Insurance Co.*, 57 Ill. App. 3d 89, 94-95 (1978). The *Squire* court, citing *Phelan*, 59 Ill. 2d at 394-95, emphasized that " 'the legislative intent [of section 143a] was to provide extensive uninsured-motorist protection for those who are "insureds" under an automobile liability policy.' " *Squire*, 69 Ill. 2d at 178-79. In reaching this conclusion, the court explicitly adopted the *Doxtater* court's reasoning and stated "it is well settled that section 143a requires coverage of insured persons regardless of the motor vehicle the uninsured motorist is driving, and *regardless of the vehicle in which the insured person is located when injured*." (Emphasis added.) *Id.* The court ultimately concluded that the parties intended for the endorsement to provide additional coverage for injuries from risks that were already covered

by the primary policy and, thus, held that the plaintiff was entitled to recover under both the primary policy and the endorsement. *Id.* at 179-81.

¶ 29    *Squire* was discussed at length in *Roby*, 57 Ill. App. 3d 89. In *Roby*, the plaintiff police officer was injured when an uninsured motorist struck his squad car while the plaintiff was on duty. *Id.* at 90. The plaintiff filed a claim under the uninsured-motorist provision in his personal vehicle insurance policy, but the defendant insurance company denied it because the plaintiff was not driving an "insured automobile" as defined in the policy at the time of the accident. *Id.* at 91. The policy exempted from the definition of "insured automobile" any " 'automobile furnished for the regular use of the principal named insured or any resident of the same household.' " The policy also excluded " 'bodily injury to an insured while occupying an automobile (other than an insured automobile) owned by a named insured or any relative resident in the same household.' " *Id.* at 92. The trial court concluded that the policy did not provide uninsured-motorist coverage for the accident because the policy " 'excluded an insured driving an automobile regularly furnished to him in his employment.' " *Id.* Relying on *Squire*, the appellate court reversed, finding that the exclusionary clause violated section 143a because it made coverage dependent upon the insured being in a vehicle listed in the policy at the time of the accident. *Id.* at 95.

¶ 30    Turning to the case at bar, it is uncontested that Merx was injured while riding as a passenger in a vehicle other than her 2012 Chevrolet Sonic covered under the Direct Auto policy. Instead, she occupied Motley's 2013 Chevrolet Cruze. Motley was both an uninsured motorist and at fault for the accident. As noted recently by our supreme court, if a passenger is injured while riding in an uninsured motor vehicle, the passenger must look to his or her own policy for recovery under its uninsured-motorist provision. *Thounsavath*, 2018 IL 122558, ¶ 39 (citing *Rockford Mutual Insurance Co. v. Economy Fire & Casualty Co.*, 217 Ill. App. 3d 181, 187 (1991)). As explained in *Rockford Mutual*,

> "[p]olicyholders and named insureds may recover under their own insurance policy when they are injured as a result of an accident in or with an uninsured motorist or vehicle, just as an injured third party may recover under his or her own uninsured motorist insurance if he or she is injured as a result of an accident in or with an uninsured motorist or vehicle." *Rockford Mutual*, 217 Ill. App. 3d at 186-87.

The intention and purpose of section 143a of the Insurance Code is to provide a means of recovery for insureds under their own uninsured-motorist provisions. *Thounsavath*, 2018 IL 122558, ¶ 38. The statute provides "protection to policyholders and named insureds for whom protection is specifically contracted." *Rockford Mutual*, 217 Ill. App. 3d at 186.

¶ 31    The policy in the instant matter unambiguously affords Merx uninsured-motorist coverage for bodily injury only if she occupied an "insured vehicle," meaning the 2012 Chevrolet Sonic, at the time of the accident. Put simply, conditioning uninsured-motorist coverage on the insured being "an occupant in an 'insured automobile,' " as it relates to Merx and the June 18, 2015, accident, would violate public policy and conflict with our supreme court's interpretation of section 143a of the Insurance Code. The court put it bluntly in *Squire*: "[I]t is well settled that section 143a requires coverage of insured persons regardless of the motor vehicle the uninsured motorist is driving, and regardless of the vehicle in which the insured person is located when injured." *Squire*, 69 Ill. 2d at 179. Merx, as the named insured who carried the legal minimum amount of liability and uninsured-motorist coverage, is entitled to coverage for her injuries stemming from the accident to the same extent she would have been afforded had

Motley carried the legal minimum amount of liability coverage. To conclude otherwise would run afoul of Illinois's clear public policy of ensuring coverage for policyholders injured by uninsured motorists. *Cf. Shefner*, 243 Ill. App. 3d at 685, 690 (holding that neither public policy nor *Squire* was violated by exclusion stating insurer would " 'not provide insurance for a vehicle other than your insured car, unless the owner of that vehicle has no other insurance applicable to [uninsured-motorist coverage],' " because it did not deny uninsured-motorist coverage merely because of the car the insured occupied at the time of injury and was phrased such that uninsured-motorist coverage could not be denied solely on that basis; indeed, " 'this safety net distinguishe[d] the exclusion *** from that at issue in *Squire*' ").

¶ 32    Direct Auto erroneously argues that the 1995 amendment to section 143a of the Insurance Code nevertheless allows the exclusion at issue in the case at bar. As discussed in *Goldstein*, "[p]rior to 1995, our courts held that the owned-vehicle exclusion in an automobile liability policy was unenforceable as to both uninsured- and underinsured-motorist coverage." *Goldstein*, 2016 IL App (1st) 140317, ¶ 18. However, the 1995 amendment added the following provision, upon which Direct Auto relies: "Uninsured motor vehicle coverage does not apply to bodily injury *** of an insured while occupying a motor vehicle owned by, or furnished or available for the regular use of the insured, a resident spouse or resident relative, if that motor vehicle is not described in the policy under which a claim is made or is not a newly acquired or replacement motor vehicle covered under the terms of the policy." Pub. Act 89-206 (eff. July 21, 1995) (amending 215 ILCS 5/143a). Thus, the legislature amended section 143a to "allow[ ] insurers to exclude unnamed owned vehicles from uninsured-motorist coverage." *Goldstein*, 2016 IL App (1st) 140317, ¶ 23.

¶ 33    In Direct Auto's estimation, the 1995 amendment to 143a of the Insurance Code "allow[s] insurers to limit [uninsured-motorist] coverage to accidents involving vehicles specified in the policy." This argument rests on a tortured reading of section 143a and finds no support in the Insurance Code or the case law relied on by Direct Auto. In denying Direct Auto's motion for summary judgment, the circuit court found that the language added by the 1995 amendment applied to, among other instances not applicable to the facts at bar, "owned vehicles *** not listed in the policy." We agree. Our primary objective is to ascertain and give effect to the legislature's intent, which is best determined from the plain and ordinary language used in the statute. *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186, ¶ 24. Under a plain reading of section 143a, uninsured-motorist coverage is not mandated if the insured is injured in a motor vehicle "owned by, or furnished or available for the regular use of the insured, a resident spouse or resident relative" (215 ILCS 5/143a (West 2014)) and if the vehicle is not listed in the policy or is not a newly acquired or replacement vehicle. The amendment is limited to the specific instances it describes. It does not "allow insurers to limit [uninsured-motorist] coverage to accidents involving vehicles specified in the policy," as Direct Auto argues, but allows insurers to exclude vehicles that are owned by the insured or their resident spouse or resident relative and that are not specified in the policy, subject to certain exceptions not applicable here. The distinction is somewhat subtle, yet determinative of the issue at bar.

¶ 34    We acknowledge that, to the extent that the facts of *Doxtater*, *Squire*, and *Roby* involved "owned-vehicle" exclusions, those cases might well have yielded different results had they been decided after the 1995 amendment to section 143a, as argued by Direct Auto. Nevertheless, those cases are instructive in resolving the instant matter because of their broad

interpretation of the uninsured-motorist statute and because the instant matter does not involve an "owned-vehicle" exclusion, as Merx was injured in a vehicle owned by a third-party.

¶ 35    It is uncontested that (1) the 2013 Chevrolet Cruze was not "owned by, or furnished or available for the regular use" of Merx and (2) Motley was not a "resident spouse or resident relative" of Merx. Thus, we agree with Merx that the language the 1995 amendment added to section 143a of the Insurance Code is simply not triggered by the facts of this case, and it therefore does not preclude uninsured-motorist coverage. For Direct Auto's argument to hold water, one would have to completely disregard the statutory qualification that the vehicle be "owned by, or furnished or available for the regular use of the insured, a resident spouse, or resident relative" in order for uninsured-motorist coverage to not apply. Where, as here, the statutory language is plain and unambiguous, we may not depart from it by reading in exceptions, limitations, or conditions that the legislature did not express, nor may we add provisions not found in the law. See *Rosenbach*, 2019 IL 123186, ¶ 24. There is no statutory basis to deny uninsured-motorist coverage to Merx where she occupied an unowned vehicle that was not furnished or available for her regular use, and Motley was an uninsured motorist.

¶ 36    The cases Direct Auto relies on are distinguishable from the instant matter. In *Goldstein*, the insured was operating his riding lawnmower on a street when he was struck and killed by a minimally insured driver. *Goldstein*, 2016 IL App (1st) 140317, ¶ 3. He had, among other automobile insurance, a policy with the defendant insurance company containing underinsured-motorist coverage. *Id.* The defendant denied coverage under the owned-vehicle exclusion in the policy, which excluded coverage for bodily injury sustained " 'by an "insured" while "occupying" *** any motor vehicle owned by that "insured" which is not insured for this coverage under this policy.' " *Id.* ¶ 4. In granting summary judgment in favor of the defendant, the trial court found that the riding lawnmower was a "motor vehicle" under the Vehicle Code and that the 1995 amendment to section 143a of the Insurance Code, which permitted the owned-vehicle exclusion in uninsured-motorist coverage, also applied to underinsured-motorist coverage. *Id.* ¶ 6. The appellate court affirmed, observing that the 1995 amendment "allow[ed] insurers to exclude unnamed owned vehicles from uninsured-motorist coverage" (*id.* ¶ 23) and concluded that there was no reason to treat underinsured-motorist coverage differently (*id.* ¶ 26).

¶ 37    The *Goldstein* court reiterated that the purpose of uninsured-motorist coverage is to place the insured "in substantially the same position he would occupy if he were injured or killed in an accident where the party at fault carried the minimum liability coverage" (*id.* ¶ 21), yet it recognized that the 1995 amendment to section 143a "meant that the insured would no longer be placed in the same position as if the wrongdoer carried the minimum insurance coverage" (*id.* ¶ 23). Direct Auto seizes on this statement and suggests that the 1995 amendment wholly upended the public policy behind the uninsured-motorist statute such that any limitation to uninsured-motorist coverage is permissible and does not violate public policy. Direct Auto reads *Goldstein*'s public policy statements far too broadly. We note that, while it draws our attention to *Goldstein*'s statement that "[t]he legislature chose to override the public policy behind the uninsured-motorist statute," Direct Auto conveniently neglects to include the words that directly follow—"as to this exclusion." See *id.* "This exclusion," of course, refers to the owned-vehicle exclusion at issue in *Goldstein* and, more importantly, the subject of the 1995 amendment. *Goldstein* demonstrates that the 1995 amendment allows automobile insurers to exclude both uninsured- and underinsured-motorist coverage for owned vehicles not listed in

the policy. The 1995 amendment did not obliterate the public policy behind uninsured-motorist coverage, as Direct Auto suggests but, rather, carved out an exception for so-called "unnamed owned-vehicles," or a vehicle that is not described in the policy, yet is "owned by, or furnished or available for the regular use of the insured, a resident spouse or resident relative *** or is not a newly acquired or replacement motor vehicle covered under the terms of the policy." As stated above, this exception is not implicated in the instant matter. The exclusion at issue here does not bar coverage for unnamed vehicles owned by the insured, as was the case in *Goldstein*, but, rather, excludes coverage for *all* vehicles, whether owned by the insured or not, other than Merx's 2012 Chevrolet Sonic. There is simply no "owned" vehicle at issue in the case at bar because Merx was injured while riding in a vehicle owned and operated by a third party. For this reason, Direct Auto's reliance on *Goldstein* is misdirected.

¶ 38    Further evidence that the public policy underpinning the uninsured-motorist statute remains intact following the 1995 amendment can be found in numerous cases published post-1995, all of which continue to state that the public policy behind uninsured-motorist coverage is to place the insured in substantially the same position he or she would occupy had the party at fault carried liability insurance in at least the amount required by law. See *Thounsavath*, 2018 IL 122558, ¶ 25; *Phoenix Insurance Co.*, 242 Ill. 2d at 57; *Rosenberg*, 312 Ill. App. 3d at 107. Even *Goldstein*, upon which Direct Auto principally relies, makes this clear. See *Goldstein*, 2016 IL App (1st) 140317, ¶ 21.

¶ 39    The other cases Direct Auto relies on—*Rosenberg*, 312 Ill. App. 3d 97, and *Cohs*, 329 Ill. App. 3d 930—are likewise distinguishable. In *Rosenberg*, the policy endorsement defined an "insured" for purposes of uninsured-motorist coverage as (1) "you," meaning the incorporated retirement village that had taken out the business automobile insurance policy for its lone vehicle, and (2) " '[i]f you are an individual, any "family member." ' " *Rosenberg*, 312 Ill. App. 3d at 99. The policy defined "family member" as " 'a person related to you by blood, marriage[,] or adoption who is a resident of your household, including a ward or foster child.' " *Id.* The decedent was a resident of the retirement village and was struck and killed as a pedestrian by an uninsured motorist. *Id.* at 98. The appellate court affirmed the trial court's dismissal of the complaint, reasoning that because the defendant was a corporation, not an individual, and corporations cannot have family members (*id.* at 101-02), the "family member" provision was not triggered (*id.* at 101) and thus the decedent was not an "insured" under the uninsured-motorist policy. Direct Auto's reliance on the rejection of the public-policy argument advanced by the plaintiff in *Rosenberg* simply misses the mark because, unlike in the instant case, the plaintiff there did not satisfy the definition of an "insured," and public policy did not warrant extending uninsured-motorist coverage to someone who did not meet that definition. Here, it is uncontested that Merx was an "insured" under the policy. Indeed, Merx just as easily could have cited *Rosenberg* for the proposition that "courts are obliged *** to ensure that individuals insured by uninsured motorist policies receive that coverage when injured by uninsured motorists." *Rosenberg*, 312 Ill. App. 3d at 107.

¶ 40    In *Cohs*, an underinsured-motorist policy endorsement defined an "insured" as (1) "[y]ou," meaning the plaintiff's corporate employer and (2) " '[a]nyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto." ' " *Cohs*, 329 Ill. App. 3d at 932. The policy defined "occupying" as " 'in, upon, getting in, on, out or off.' " *Id.* The plaintiff was working some 12 feet away from the insured vehicle when he was struck by an underinsured motorist. *Id.* at 930-31. The First District upheld the definition of the term "insured" under the

underinsured-motorist provision, even though that definition was narrower than the definition under the liability coverage in the same policy,[3] and it concluded that the term neither was unduly restrictive nor violated section 143a. *Id.* at 937. As such, the court held that the plaintiff was not an "insured" under the policy because he did not occupy the vehicle at the time of the accident. *Id.*

¶ 41    Both *Rosenberg* and *Cohs* hinged on whether the injured party fell within the definition of an "insured" under the policies at issue. This determination was critical to the resolution of those cases because "[n]either the statute nor the case law places any restriction on the right of the parties to an insurance contract to agree on which persons are to be the 'insureds' under an automobile insurance policy." *Thounsavath*, 2018 IL 122558, ¶ 31. Once someone qualifies as an insured under an automobile insurance policy, however, "the statute and case law become applicable and prohibit an insurance company from either directly or indirectly denying uninsured-motorist coverage to an 'insured.' " *Phelan*, 59 Ill. 2d at 395. Here, again, it is uncontested that Merx is an "insured" under the Direct Auto policy.

¶ 42    Because Merx unquestionably constituted an "insured" at the time of the June 18, 2015, accident, uninsured-motorist coverage extends to her under the policy's liability provisions. To deny uninsured-motorist coverage to Merx simply because she did not occupy her insured automobile at the time of the accident, for which Direct Auto advocates, would contravene public policy and the legislative purpose behind section 143a of the Insurance Code by foreclosing her from being placed in substantially the same position she would have occupied had she been injured in an automobile accident where the party at fault carried the legal minimum amount of liability coverage. Accordingly, the trial court acted properly in granting judgment on the pleadings in favor of Merx and denying Direct Auto's motion for summary judgment.

¶ 43                                 III. CONCLUSION
¶ 44    For the reasons stated, we affirm the circuit court's orders granting judgment on the pleadings in favor of Merx and denying Direct Auto's motion for summary judgment.

¶ 45    Affirmed.

---

[3]We note that a different panel of the First District declined to follow *Cohs* regarding a similar issue, holding that the term "insured" had to be defined the same way for uninsured and underinsured coverage because the use of different definitions contravened the intent of the Insurance Code. *Schultz v. Illinois Farmers Insurance Co.*, 387 Ill. App. 3d 622, 629 (2009); see also *DeSaga v. West Bend Mutual Insurance Co.*, 391 Ill. App. 3d 1062, 1068-70 (2009).